THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT G. GLIDEWELL, Defendant-Appellant.

Fourth District   No. 15363

Opinion filed November 19, 1979.

Richard J. Wilson and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Marc D. Towler and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(2)), entered upon a jury verdict. The information alleged that the defendant struck, threw or hit his step-daughter, aged three years, against a toilet fixture "knowing that such act created a strong probability of death or great bodily harm." A sentence of 20 years was imposed.

Upon appeal it is urged that defendant was denied a fair trial and the trial court abused its discretion when it denied defendant's motion *in limine* which would excise from defendant's tape-recorded statement certain matters and conduct which are said to describe unrelated offenses and to portray defendant as an evil person. It is also argued that defendant was not proven guilty beyond a reasonable doubt. An ancillary issue argued is that the trial court erred in failing to instruct the jury *sua sponte* upon the issues of involuntary manslaughter.

No questions are raised as to the voluntary nature of the tape-recorded statement. It was commenced about four hours after the death was ascertained and following a conversation between the defendant and police officers over a period of about 45 minutes. As transcribed, the statement included some 52 typed pages. As noted by the trial court, the statement is "rambling" and upon reading, portions are virtually incoherent.

It is argued that certain portions were extraneous to the issues. These included a statement of defendant's relationship with his parents—his father demanded perfection in defendant's conduct and was described as

having worked 365 days without missing a day. He also stated his mother maintained a home so immaculate that one could eat from the floor. Defendant had run away from home but had returned. Defendant stated his belief that since his marriage his parents had refused or were unresponsive to defendant's wishes that they visit his home, and he believed that they were indifferent to his family.

Defendant also objects to a brief portion of the statement relating to his detestation of his wife's cats which were permitted to roam through the home and were described as shedding hair which got into his food. On one occasion, he observed a cat shedding hair in the kitchen and he grabbed it, squeezed it and perhaps broke its leg. It is argued that such statement portrayed defendant as an evil man and was irrelevant to the issues.

Defendant argues that the statement contains reference to unrelated crimes in the portion of the statement relating to the discipline imposed upon the victim and her sister, aged about two years. The focus was upon the difficulty in toilet training and the resulting condition of the defendant's home. He described that condition as no way to live. The discipline involved placing the child upon the toilet or commode and leaving her there four or five hours. There is no evidence that the mother objected and the defendant stated that the discipline was effective for a period of a few days. The statement also included reference to spanking the children when defendant would sometimes strike them in the face hard enough to knock them over, but not enough to leave a bruise or mark. This is said to be an offense of cruelty to children. Upon the motion *in limine*, defendant argued that all portions of the statement should be excluded except the portions taken beginning with the time that defendant took the children into the bedroom.

The events in evidence at defendant's home on March 29, 1978, are largely from the statement of defendant. He arose about 1 p.m. Between 1:30 and 2 p.m. he undertook to discipline the child using his belt. Two neighbors testified to hearing the loud voice of a man and a child crying. The wife testified that she intervened and thereafter the defendant took the child into the bathroom. She then returned and was sitting in a front room. Defendant's statement was that he instructed the child to take down her clothes. She did so and stood there looking at him. The statement repeats in several places that he then picked her up and "threw" her on the "pot." The same statement was made in substance in the presence of witnesses. The statement continues that "her eyes were rolled back into her head a little bit and she started to bending backwards and stuff and then we took her back into the bedroom." The statement and the wife's testimony are that the child's head rotated in such a way that defendant and his wife believed that the neck was broken. Defendant

attempted to give mouth-to-mouth resuscitation while the wife called an ambulance. The child was dead when the ambulance technicians first saw her.

At the time of the hearing on the motion *in limine*, the trial court was aware that defendant had requested funds for psychiatric examination and that discovery had disclosed a possible insanity defense. There had been, however, the report of a psychiatrist advising that defendant knew his acts and the consequences; that defendant's acts were the product of his personality structure; that he had no intent to kill but did not realize his own strength. In denying the motion, the trial court stated that the portions of the statement objected to were probative of defendant's mental state and violent nature.

Defendant cites *People v. Oden* (1960), 20 Ill. 2d 470, 170 N.E.2d 582, and *People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120, as holding that a defendant's volunteered statement of unrelated crimes are inadmissible and must be excised from any statement or confession presented to the jury. Terming the discipline of the children evidence of unrelated offenses, defendant asserts the denial of a fair trial and an abuse of judicial discretion in the ruling.

Defendant argues that evidence of offenses unrelated to the charge for which he is on trial is incompetent and inadmissible unless the evidence tends to prove a fact in issue or goes toward showing motive, intent, identity, absence of mistake or *modis operandi*. Such language is used in *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 493. That opinion continues, however, saying:

> "In fact it has been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. *People v. Dewey*, 42 Ill. 2d 148, 157; *People v. Cole*, 29 Ill. 2d 501, 503."

In *People v. Manzella* (1973), 56 Ill. 2d 187, 197, 306 N.E.2d 16, 21, the court stated:

> "[E]vidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit the crime. *People v. Cole* (1963), 29 Ill. 2d 501, 503."

The rule is stated most explicitly in McCormick, Evidence §190, at 447-48 (2d ed. 1972), which states:

> "The rule is that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character. There are numerous other purposes for which evidence of other criminal acts may be offered, and when so offered the rule of exclusion is simply inapplicable."

In *People v. Durso* (1968), 40 Ill. 2d 242, 251, 239 N.E.2d 842, 847, it is stated:

"The test for admission of such evidence is whether it is so closely connected with the main issue that it tends to prove the accused guilty of the crime charged. (*People v. Tranowski*, 20 Ill. 2d 11.) * * *. Without reiterating the facts it is readily apparent that each item of evidence presented constituted a link in a chain of relevant circumstances connecting defendants with the decedent and Fiorenzo, furnishing a reason for and culminating in the death of Moschiano. We find no error in the admission of such testimony."

In each case it must be determined from the facts as to whether the evidence of other crimes was so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. (*People v. Wilson* (1970), 46 Ill. 2d 376, 263 N.E.2d 856.) So, in *People v. Manzella* (1973), 56 Ill. 2d 187, 306 N.E.2d 16, *cert. denied* (1974), 417 U.S. 933, 41 L. Ed. 2d 236, 94 S. Ct. 2644, evidence of prior assaults and threats by defendant were held relevant as tending to throw light upon the family relationships and defendant's intentions. In *People v. Fletcher* (1978), 59 Ill. App. 3d 310, 375 N.E.2d 1333, it was held that a robbery and a theft were relevant as part of a chain of circumstances relevant to a charge of murder and aggravated kidnapping. See also *People v. Dupree* (1979), 69 Ill. App. 3d 260, 387 N.E.2d 391; *People v. Woodruff* (1978), 62 Ill. App. 3d 949, 379 N.E.2d 907; *People v. Smrekar* (1979), 68 Ill. App. 3d 379, 385 N.E.2d 848.

■■ Assuming arguendo that the matters contained in defendant's statement suggested other offenses or improper conduct, such are relevant to the family relationship, the chain of circumstances leading to the offense charged, and are closely connected to the development of the occurrence at issue. The admission of the evidence did not deprive defendant of a fair trial and the trial court did not abuse its discretion.

■■ Defendant argues that he was not proven guilty beyond a reasonable doubt. In one aspect, the argument is that the trial court erred in failing to give *sua sponte* instructions defining involuntary manslaughter and setting forth the issues of that offense. Defendant concedes that the record is clear that the trial judge suggested that defendant tender such instructions; that both defendant, individually and through his counsel, declined to do so; that counsel objected to the giving of such instruction and stated a belief that the evidence did not support the theory of involuntary manslaughter. In *People v. Nuccio* (1973), 54 Ill. 2d 39, 294 N.E.2d 276, it was determined that where, at a murder trial, defendant did not request a manslaughter instruction and opposed the giving of the instruction, defendant could not on subsequent appeal complain that the evidence, at most, establishes guilt of manslaughter.

Defendant also argues that the evidence does not establish that he performed the acts in evidence knowing that they created a strong probability of death or of great bodily harm. The only evidence as to the acts performed comes from defendant's statement and his testimony at trial. Defendant's statement indicates that the girl's symptoms appeared immediately following the act of "throwing" her upon the toilet. At trial, defendant testified that he placed the girl on the toilet, that he turned and took five or six steps away but looked back and saw her feet pointing up from the toilet bowl at an unusual angle. He returned to find her body inside the toilet bowl and that he then called his wife and they attempted to revive her.

At trial, he testified that there was a medicine chest on the wall above the adjacent lavatory and that on other occasions the children had climbed or attempted to climb from the toilet bowl onto the lavatory to reach the cabinet. He did not testify that the victim did so on this occasion, but only to the past attempts. He did not testify that he heard a cry from the child or some other sound suggesting that she fell from the lavatory.

At trial, it was argued that while defendant was taking the six steps into the hall, the child climbed upon the lavatory from the toilet seat and fell into the toilet bowl.

Defendant's testimony must be considered in the light of the testimony of the pathologist who performed an autopsy. In addition to fresh bruises upon the head and face and upon the thighs and feet, the pathologist discovered certain substantial injuries which, in his medical opinion, were caused separately.

The cause of death was found to be a rupture of the left ventricle of the heart. The pathologist was of the opinion that such rupture could only be caused by a sudden intense pressure upon the sternum pressing the heart against the backbone. There was also found to be a massive hemorrhage on the interior of the left side of the skull; a hemorrhage in the mesentary which would result from a sharp blow; a bruise on the chest caused by a force other than the injury to the ventricle, and a large bruise at the base of the neck between the shoulder blades. It was the opinion of the pathologist that each of the five injuries occurred or were caused by separate and distinct forces. It was the pathologist's opinion that the rupture of the ventricle was the last injury received and that death would ensue within seconds; that the muscles would lose all control of the body and that the latter condition produced the head movements which caused defendant to believe that the child's neck was broken. It was the opinion of the pathologist that defendant's act of "throwing" the child onto the "pot" would *not* cause the rupture of the heart.

The record discloses that the child did not have the recent bruises

and the injuries described prior to the time that the defendant began to discipline her on March 29. The sum of the several injuries from the effect of force must be weighed with the other evidence, and it is for the trier of fact to determine whether defendant's statement of his acts explains or accounts for such varied severe injuries, each caused separately and independently. While a single act of force might occur in the absence of knowledge of the probability of death or serious injury, several applications of force may bring a different inference concerning such knowledge.

Defendant asks that this court reduce the offense to involuntary manslaughter under the authority of Supreme Court Rule 615 (58 Ill. 2d R. 615(b)(3)) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(3)). He argues that the trial court believed that instructions upon involuntary manslaughter were appropriate and that the jury inquired as to whether there were degrees of murder.

Section 4—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 4—5) defines knowledge within the meaning of the Code:

"A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct.
❋ ❋ ❋ ."

Upon this record, it is not patent that this element of the knowledge has not been established. *People v. Oliver* (1976), 38 Ill. App. 3d 166, 347 N.E.2d 865; *People v. Clark* (1979), 70 Ill. App. 3d 698; 388 N.E.2d 1107; *People v. Trinkle* (1976), 40 Ill. App. 3d 730, 353 N.E.2d 18.

■ In the absence of eyewitness testimony other than that of defendant, his knowledge that the acts created a strong probability of death or great bodily harm to the victim may be inferred by the trier of fact from the sum of all of the evidence in the record. We conclude that the evidence supports the verdict of the jury.

The judgment is affirmed.

Affirmed.

REARDON, P. J., and CRAVEN, J., concur.