UNITED STATES of America, ex rel.
Robert Lee WILLIAMS, Petitioner,

v.

Michael LANE, et al., Respondents.

No. 85 C 9794.

United States District Court,
N.D. Illinois, E.D.

Oct. 9, 1986.

James J. Doherty, Public Defender of Cook County, Alison Edwards, Asst. Public Defender, Chicago, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen. of Ill., Sally L. Dilgart, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Petitioner was convicted of rape in state court and sentenced to ten years in prison. Pursuant to 28 U.S.C. § 2254 he now petitions for a writ of habeas corpus, contending that his constitutional rights were violated when the prosecution improperly commented on petitioner's failure to testify.

### FACTS

The following is a summary of the facts presented at trial. Diane Williams, the complaining witness and no relation to petitioner, testified that she knew petitioner as an auto mechanic she had employed to fix her automobile in front of her house. She denied ever seeing him socially. She testified that on the night of the incident petitioner had asked to go along with her and another woman to a disco lounge and had accompanied them there, but could not get in because his dress was improper. He met with them again about 4 a.m. and, after an unsuccessful effort to find another party, he offered to drive her home. As she was being driven home by petitioner on December 1, 1982, at about 5 a.m., he stopped his car on the shoulder of the Dan Ryan Expressway. Petitioner allegedly ordered Diane to engage in sexual intercourse with him. A wrestling match ensued, during which he took her head and forcibly threw it against the car door. Petitioner then held a razor to Diane's throat, pulled her pants off and forced her to have sexual intercourse with him. Afterward he drove to a gas station and left Diane alone in the car. A few minutes later he drove her home. When Diane arrived at home she awoke her mother and told her that she had been raped. Her mother called the police. The police came to the home and took Diane to the hospital for an examination. On January 31, 1983, Diane saw petitioner in a lounge and called the police, who promptly arrested him.

Mamie Williams, the victim's mother, testified that when Diane came home that night she was crying, nervous, very shook up, and said that she had been raped. Mamie called the police and went with Diane to the hospital. A crime lab technician testified that she had found the presence of spermatozoa in vaginal smears taken from Diane, and her testimony was corroborated by Officer Ellis. Officer Benoad also testified for the prosecution regarding the arrest and made an in-court identification of petitioner.

It was stipulated that the hospital doctor who examined Diane found that her wrist had been bruised, but found no evidence of vaginal trauma. Both sides also stipulated to the police report describing Diane as not

injured and to a report by a hospital nurse's assistant stating "patient (Diane) denies injury." At the preliminary hearing Diane denied receiving any injury.

Petitioner did not testify. Only Vanessa Baker and Vernita Kendall, friends of petitioner, testified for the defense. Vanessa Baker testified that she had introduced Diane to petitioner in September of that year because the former's car needed repair and the latter is a car mechanic. After that, but before the alleged rape, Vanessa Baker saw the two together at a card game at her mother's house. Later that evening Vanessa, Diane and petitioner went to a Halloween party together. (Tr. 199–200.) Vernita Kendall corroborated Vanessa Baker's testimony regarding the card game and the three going off together to a Halloween party. She also testified that, in her opinion, Diane and Bob Williams were not dating.

Petitioner was tried before a jury on July 15, 1983, Judge George Marovich presiding, and guilty verdicts on charges of rape and unlawful restraint were returned. On August 12, 1983, the court sentenced Williams to concurrent prison terms of ten years for rape and three years for unlawful restraint. On appeal the court affirmed the rape conviction but vacated the conviction for unlawful restraint. On February 26, 1985, the Illinois Supreme Court denied the petition for leave to appeal. Petitioner brings this federal habeas corpus action, asserting that the prosecution improperly commented on petitioner's failure to testify during its closing argument at trial.

## DISCUSSION

### I. Closing Argument

In its closing argument the prosecution made nine references to the petitioner's failure to testify. The prosecution first referred to the events that occurred the night of the alleged rape in its summation:

> You cannot guess, you cannot conjecture as to what happened out there. The evidence in this case is uncontradicted, unrebutted and undisputed.

(Tr. 217.) A second prosecutor made eight references to petitioner's failure to testify in rebuttal. Discussing the evidence presented by the defense, the prosecution noted:

> Counsel brought you a list of things that he says discredits the testimony of Diane Williams. Let's go over them again and I agree, the issue is whether you believe Diane. Remember her uncontradicted and unrebutted testimony?

(Tr. 228.) Referring to petitioner's use of force on his victim, the prosecution said:

> And remember her testimony, the uncontradicted, unrebutted testimony of Diane Williams?

(Tr. 229.)

> By force and against her will, and we proved that beyond a reasonable doubt. She told it to you and nobody else told you anything different.

(Tr. 230.) At this point defense attorney objected. The court noted the objection but did not give any instruction to the jury regarding petitioner's constitutional right to remain silent. Immediately thereafter the prosecution commented on the victim and petitioner's relationship:

> Where is the evidence that this was a date? Where is the evidence? Who got up on this witness stand and told you that these two were dating?

(Tr. 230.) The defense again objected. A sidebar was had off the record and the prosecution was warned about making references to the petitioner's refusal to testify. The prosecutor stated that he would not so comment (Certification by Trial Court entered Nov. 21, 1983). However, when the prosecutor continued, he said:

> Thank God it [the victim's head] wasn't smashed enough to bruise it and that evidence is uncontradicted or unrebutted.

(Tr. 231.) Next, in describing the events on the night of the alleged rape, the prosecutor said:

> Her uncontradicted testimony is that she was raped, that he pulled her pants down

and had a razor in his hand and he forced sexual intercourse. That is the evidence. (Tr. 233.) Lastly, in closing, he remarked:

The testimony of Diane Williams, as it stands, is uncontradicted and clear. She was raped by this guy.

(Tr. 236–37.) The trial judge also certified that:

During this line of argument, prior to the sidebar, [the prosecutor] punctuated his remarks by pointing at the witness stand.

(Certification by Trial Court entered Nov. 21, 1983.)

## II. *Petitioner's Constitutional Claims*

### A. *References to Petitioner's Failure to Testify*

The Constitution guarantees a fair trial under the Fifth, Sixth and Fourteenth Amendments. Petitioner claims that he was denied a fair trial in the state court proceeding. The Supreme Court has ruled that a federal court has the power to examine federal constitutional issues even after trial and review by the state courts. *Brown v. Allen,* 344 U.S. 443, 469, 73 S.Ct. 397, 413, 97 L.Ed. 469 (1953). In accord, 28 U.S.C. § 2254 provides that the federal courts shall entertain an application for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

 Improper prosecutorial argument may warp the fact-finding process of the jury by deflecting its attention away from consideration of the evidence presented at trial. *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). Direct reference by a prosecutor to a defendant's decision not to testify is always a violation of defendant's Fifth Amendment right against self-incrimination. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Comments that are indirect references to the defendant's failure to testify are highly disfavored but are

not automatic grounds for reversal. *United States v. Muscarella,* 585 F.2d 242 (7th Cir.1978). Usually the line of demarcation between constitutionally permissible and unacceptable commentary is quite difficult to draw. Indirect references to the defendant's failure to testify are constitutionally impermissible if "the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify." *United States ex rel. Burke v. Greer,* 756 F.2d 1295, 1300 (7th Cir.1985).

 Petitioner alleges that a constitutional error occurred during closing argument when several references were made by the prosecution to petitioner's failure to testify. After reviewing the record, we believe that the underlying purpose and ultimate effect of prosecutors' comments was to call attention to petitioner's failure to testify.

The crucial inquiry in evaluating the prejudice conveyed by indirect reference to a failure to testify is a consideration of how the jury would view the closing argument as a whole. ... [R]epeated references to "uncontradicted" testimony is likely to cause the jury to view the closing argument as a commentary on defendant's failure to testify and as a suggestion to view that failure to testify as indicative of guilt.

*Burke,* 756 F.2d at 1302. This is especially true here, where only the petitioner could have clearly rebutted Diane Williams' testimony. *See id.* at 1301. Consequently, we find prosecutors' remarks clearly improper and rule that defendant's Fifth Amendment right to remain silent was violated.

### B. *Harmless Error*

 Having identified the trial error as one of constitutional magnitude, we apply the *Chapman* standard to impose on the government the burden of proving beyond a reasonable doubt that the constitutional error complained of did not contribute to the verdict obtained. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17

L.Ed.2d 705 (1967); *United States ex rel. Miller v. Greer*, 789 F.2d 438, 442–45 (7th Cir.1986); *Burke*, 756 F.2d at 1295. The standard for harmless error analysis adopted in *Chapman* concerning constitutional error is considerably more onerous than the standard for non-constitutional errors. *Miller*, 789 F.2d at 444, *quoting United States v. Lane*, 474 U.S. ——, ——, 106 S.Ct. 725, 730 n. 9, 88 L.Ed.2d 814 (1986). To satisfy its burden the government must do more than demonstrate by circumstantial evidence that defendant's guilt exists. *Burke*, 756 F.2d at 1302. Rather, the case against the defendant must be "overwhelming" in order to find harmless error. *Id.* at 1302; *see United States v. Shue*, 766 F.2d 1122, 1132–33 (7th Cir.1985) (constitutional error not harmless where "the evidence against appellant is not so overwhelming as to convince us that the government's comments could not have played a role in the jury's guilty verdicts."). The Supreme Court has ruled that the overwhelming guilt standard is satisfied if "a more compelling case of guilt would be difficult to imagine." *United States v. Hasting*, 461 U.S. 499, 511, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983) (defendants were promptly picked out of a lineup, there were corroborating eyewitnesses, stolen property was found in one of the defendant's possession, and there had been identification of the car used and one of defendant's fingerprints).

In Illinois, to prove a charge of rape the state must show that intercourse was committed by force and against the will of the female. Ill.Rev.Stat. ch. 38, ¶ 11–1. The uncorroborated testimony of the victim is itself sufficient to sustain a rape conviction if that testimony is clear and convincing. *People v. Thomas*, 96 Ill.App.3d 443, 448, 51 Ill.Dec. 849, 854, 421 N.E.2d 357, 362 (1st Dist.1981). If it is not clear and convincing, corroboration is required to sustain a rape conviction. A victim's prompt complaint of rape is recognized as corroboration of her testimony. *People v. Edmond*, 76 Ill.App.3d 540, 544, 32 Ill.Dec. 159, 164, 395 N.E.2d 106, 111 (1st Dist. 1979). Here Diane Williams testified that

she promptly told her mother that night that she had been raped. Her mother's testimony supports her statements. In addition, the presence of spermatozoa in the vaginal smear taken from Diane can be considered corroboration of her testimony that there was intercourse.

Furthermore, there is no definite standard fixing the amount of force required to show non-consensual intercourse. *Thomas*, 96 Ill.App.3d at 448, 51 Ill.Dec. at 854, 421 N.E.2d at 362. Petitioner argues that Diane sustained no injuries during the alleged rape, and the police and hospital reports generally support petitioner's contention. However, evidence of injury to the victim's body is not necessary to sustain a charge of rape. *People v. Szudy*, 108 Ill. App.3d 599, 606, 64 Ill.Dec. 208, 213, 439 N.E.2d 137, 142 (1st Dist.1982).

But the fact that there was enough evidence to sustain petitioner's conviction does not render harmless the prosecutor's unconstitutional statements. *See Burke*, 756 F.2d at 1302. The issues in this case are force and consent, both of which involve findings of credibility. *People v. Barbour*, 106 Ill.App.3d 993, 999, 62 Ill.Dec. 641, 647, 436 N.E.2d 667, 673 (1st Dist.1982); *People v. Edmond*, 76 Ill.App.3d at 545, 32 Ill.Dec. at 165, 395 N.E.2d at 112. There were no witnesses to the alleged rape other than Diane and petitioner, and Diane's testimony was contradicted on matters that could raise reasonable doubts about her credibility. Two witnesses testified that they had seen Diane and petitioner playing cards and going to a Halloween party together before the night of the alleged rape, while Diane claimed that her only contact with petitioner was when he worked on her car. It is possible that Diane was not entirely candid about her relationship with petitioner, which would tend to cast some doubt on the issue of consent.

Diane's account of her struggle with petitioner was also contradicted. At trial Diane testified that petitioner threw her head against the car door and that she suffered a wrist injury. A hospital doctor who examined her corroborated her report of a

wrist injury. But the police report described her as uninjured; a report by a hospital nurse's assistant states that she denied injury; and at the preliminary hearing she denied receiving any injury. Nor was there any evidence of vaginal trauma. These facts tend to cast some doubt on the issue of force.

Furthermore, the trial judge in the case did not immediately instruct the jury to disregard the prosecution's remarks and inform the jury of defendant's constitutional right to remain silent. Even after the court called a sidebar conference the prosecution continued to comment on the petitioner's failure to testify. These four prosecutorial comments to uncontradicted testimony did not specifically rebut what had been said in the defense's closing argument. Rather, these comments and the fact that the prosecutor punctuated his remarks by pointing at the witness stand called attention to the petitioner's silence, to which he has a constitutional right.

■ In his final instruction the judge did tell the jury that "the fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict." (Tr. 318.) Such final jury instructions are "ordinarily not sufficient," however, to cure constitutional errors. *Burke,* 756 F.2d at 1303; *United States v. Buege,* 578 F.2d 187, 189 (7th Cir.1978), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978); *see also Miller,* 789 F.2d at 447 ("we hesitate to hold that anything other than a clear, immediate, and unambiguous cautionary instruction can be sufficient to cure a *Doyle* violation.").

■ The court believes that the evidence against petitioner was not overwhelming and that the trial court's cautionary instruction was insufficient to cure the constitutional error. Under these circumstances, it is not clear beyond a reasonable doubt that, absent the prosecutors' improper comments, the jury would have found petitioner guilty of rape. *See Miller,* 789

F.2d at 447. Accordingly, the court holds that the state has not met its burden of showing that the prosecutors' violation of petitioner's Fifth Amendment rights was harmless.

### III. *Waiver*

The Illinois Appellate Court ruled that petitioner did not object vigorously enough at trial to preserve his constitutional claims for review. Respondent argues that this procedural default resulted in a waiver of those claims for the purposes of federal habeas corpus relief as well. Therefore, respondent maintains, this court cannot reach the merits of petitioner's claims and the petition must be dismissed. The court disagrees.

### A. *Procedural Default*

One of the four issues presented for review on petitioner's appeal from his conviction was

[w]hether the prosecutors committed reversible error during closing argument by commenting on defendant's silence at trial.

Petitioner's appellate brief at 4. A three-judge panel of the Illinois Appellate Court decided the appeal without oral argument. That panel issued an opinion affirming petitioner's rape conviction without any discussion of the prosecutor's comments.

On a petition for rehearing two members of the original panel[1] conceded that petitioner's argument about the prosecutors' statements had not been addressed. However, the petition for rehearing was denied. The panel held that petitioner had waived any error by failing to object, stating in a short supplemental order that

one prosecutor on five occasions during his portion of the closing argument stated that complainant's testimony was uncontradicted. No objection is [sic] made to four of those comments and, while an objection was made to the fifth, no ruling

---

1. One of the three members of the original panel died before the petition for rehearing was considered.

thereon was made nor requested by defendant. The other prosecutor prefaced his summarization of the testimony of the State's four witnesses with a statement as to each that she took an oath, subjected herself to cross-examination and told what she knew. No objection was made to any of these comments.

... [I]t appears to us from the nature and number of the comments that they could have been calculated to direct the attention of the jury to the fact that defendant did not testify. However the failure to make objections thereto is a waiver of any error....

Supplemental Rule 23 Order at 1–2.

The Illinois Appellate Court appears to have misread the trial record. Petitioner's trial counsel objected to the prosecutors' comments not once, but twice. Moreover, although the trial judge did not make a formal ruling on the prosecutors' comments, the judge did warn the prosecutors about referring to petitioner's failure to testify. Nevertheless, the Illinois Appellate Court ruled that a procedural default had occurred under Illinois law, and that ruling will be respected. *See United States ex rel. Crist v. Lane,* 745 F.2d 476, 482–83 (7th Cir.1984).

### B. *Cause and Prejudice*

■ The existence of a procedural default does not end the inquiry, however. Federal Courts have the power under 28 U.S.C. § 2254 to look beyond a state procedural forfeiture in order to examine a state prisoner's claim that his constitutional rights have been violated. *Riner v. Owens,* 764 F.2d 1253, 1256 (7th Cir.1985). To obtain review, a federal habeas petitioner who has failed to comply with a state's contemporaneous objection rule must show cause for the procedural default and prejudice attributable thereto. *Murray v. Carrier,* 477 U.S. ——, 106 S.Ct. 2639, 2644 (1986), *citing Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

In *Sykes,* the Supreme Court left for resolution in future decisions the precise definition of the cause and prejudice standard. 433 U.S. at 87, 97 S.Ct. at 2506. Later cases established that the standard is a flexible one:

The terms "cause" and "actual prejudice" are not rigid concepts; they take their meaning from the principles of comity and finality.... In appropriate cases those principles must yield to the imperative of correcting a fundamentally unjust incarceration.

*Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982); *see Wainwright v. Sykes,* 433 U.S. at 95–96, 97 S.Ct. at 2510–2511 (Stevens, J., concurring).

The flexibility of the cause and prejudice standard is especially pertinent here because this is an unusual case. This is not a case where a defendant failed to raise any objection at trial. *Compare, e.g., Wainwright v. Sykes* (defendant failed to challenge the admissibility of his statements to the police at any time during trial or direct appeal, and sought to raise a constitutional claim for the first time in a collateral attack). Nor is this a case where a defendant failed to present an issue for appeal. *Compare, e.g., Murray v. Carrier* (defendant failed to assign prosecutors' denial of access to victim's statements as error in his petition for appeal). Instead, this is a case where the objections raised at trial were held to be insufficiently vigorous to preserve an issue otherwise properly presented on appeal to the Illinois Appellate Court. With these considerations in mind, the court turns to a detailed analysis of the cause and prejudice requirements.

### 1. *Cause*

■ The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule. *Murray v. Carrier,* 106 S.Ct. at 2646. Because of the broad range of potential reasons for an attorney's failure to comply with a procedural rule, and the virtually limitless array of contexts in which a procedural default can occur,

the Supreme Court has not given the term "cause" precise content. *Reed v. Ross*, 468 U.S. 1, 13, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984); *see Murray v. Carrier*, 106 S.Ct. at 2646 (declining to catalog circumstances constituting "cause").

In *Reed v. Ross*, the Court explained the policies underlying the cause requirement:

> Underlying the concept ... is at least the dual notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel [citations omitted], and that defense counsel may not flout state procedures and then turn around and seek refuge in federal court from the consequences of such conduct [citations omitted].... [D]efense counsel may not make a tactical decision to forego a procedural opportunity—for instance, an opportunity to object at trial or to raise an issue on appeal—and then, when he discovers that the tactic has been unsuccessful, pursue an alternative strategy in federal court. The encouragement of such conduct by a federal court ... would not only offend generally recognized principles of comity, but would also undermine the accuracy and efficiency of the state judicial systems to the detriment of all concerned.

468 U.S. at 13–14, 104 S.Ct. at 2909.

 Here the procedural default was manifestly not attributable to an intentional decision by counsel in pursuit of his client's interests.[2] *See Reed*, 468 U.S. at 14, 104 S.Ct. at 2909. Petitioner raised two objections to statements made in the prosecutors' closing argument. After the second objection the trial judge admonished the prosecutor and the prosecutor agreed to stop referring to petitioner's failure to testify. Instead of keeping the agreement, however, the prosecutor continued to refer to petitioner's failure to testify during the remainder of the closing argument. While additional objections may have been warranted, defense counsel's failure to raise

repeated objections on the same point during closing argument "does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar." *Reed v. Ross*, 468 U.S. at 15, 104 S.Ct. at 2910. The court finds that the prosecutor's agreement and subsequent "double-cross" in this case constituted an objective factor external to the defense that impeded petitioner's efforts to comply with Illinois' procedural rules. Accordingly, the court holds that the cause requirement is satisfied.

### 2. *Prejudice*

In *Phillips v. Lane*, 787 F.2d 208, 215 (7th Cir.1986), the Seventh Circuit declared:

> Prejudice means more than not harmless; it means probably changed the outcome so that a miscarriage of justice would result if the procedural default were enforced.

*See Murray v. Carrier*, 106 S.Ct. at 2649 (prejudice constitutes a showing that the prisoner was denied fundamental fairness); *Reed v. Ross*, 468 U.S. at 12, 104 S.Ct. at 2908 (prejudice exists where but for the alleged error, defendant "might not have been convicted."); *Engle v. Isaac*, 456 U.S. at 134–35, 102 S.Ct. at 1575 (showing required to establish prejudice is greater than the showing required to establish plain error). Thus, prejudice and harmless error are not mirror images. Nevertheless, they bear a strong resemblance. *See Wainwright v. Sykes*, 433 U.S. at 98, 97 S.Ct. at 2512 (White, J., concurring); *id.* at 110, 117, 97 S.Ct. at 2518, 2522 (Brennan, J., dissenting).

Much of the harmless error discussion above, therefore, applies with equal force to an analysis of prejudice. Here we emphasize that the state's case against petitioner rested almost entirely on the credibility of one witness and that credibility was impeached by witnesses for the defense. Far from being overwhelming, the evidence against petitioner, standing alone,

---

**2.** If the default *was* attributable to a deliberate trial tactic, waiver would result even under the more lenient "deliberate bypass" standard of

*Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

provided an ample basis for reasonable doubt in the minds of the jurors on the issue of consent. Thus the court finds that the prosecutors' comments were more than merely "not harmless"—they constituted "actual and substantial prejudice" such that petitioner was denied fundamental fairness at trial.

### 3. *Miscarriage of Justice*

Even if petitioner had failed to satisfy the technical cause and prejudice requirements, the court believes that this is the sort of extraordinary case that would justify reaching petitioner's constitutional claims on the merits regardless of the procedural default. The Supreme Court has consistently stated that a state prisoner's procedurally defaulted constitutional claim may be heard to correct a fundamentally unjust incarceration, notwithstanding the cause and prejudice standard. *See Smith v. Murray,* 477 U.S. ——, ——, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986); *Murray v. Carrier,* 106 S.Ct. at 2650; *Engle v. Isaac,* 456 U.S. at 135, 102 S.Ct. at 1575.

An incarceration can be fundamentally unjust when a constitutional error "serve[s] to pervert the jury's deliberations." *See Smith v. Murray,* 106 S.Ct. at 2668. The court believes that the prosecutor in the instant case, by repeatedly calling attention to petitioner's failure to testify in a case resting almost entirely on issues of credibility between petitioner and the complaining witness, perverted the jury's deliberations. If necessary, the court would reach the merits of petitioner's constitutional claims on this basis alone.

This approach would be particularly appropriate here. The cause and prejudice requirements rest ultimately on a rationale of comity and federalism. *See Murray v. Carrier,* 106 S.Ct. at 2646; *Wainwright v. Sykes,* 433 U.S. at 83, 88, 97 S.Ct. at 2504, 2507. As the difficulty of preserving a constitutional issue increases, the state's interest in maintaining that level of difficulty diminishes; indeed, federal courts are not bound by a state procedural rule that sets the threshold for preserving

a constitutional issue so high as to be unreasonable. *See James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984); *Wainwright v. Sykes,* 433 U.S. at 107 n. 9, 97 S.Ct. at 2517 n. 9 (Brennan, J., dissenting); *see also* Note, *On the Threshold of Wainwright v. Sykes: Federal Habeas Court Scrutiny of State Procedural Rules and Rulings,* 83 Mich.L.Rev. 1393, 1415–27 (1985) (state procedural ruling is adequate to bar habeas review only where the forfeiture called for is reasonably calculated to promote a legitimate interest of the state). Because petitioner objected twice to the prosecutors' comments during closing argument, the magnitude of the state's interest in enforcing its contemporaneous objection rule is greatly reduced. *See Smith v. Murray,* 106 S.Ct. at 2673 (Stevens, J., dissenting) (magnitude of the state's interest must be considered in every habeas corpus decision); *Wainwright v. Sykes,* 433 U.S. at 88–89, 97 S.Ct. at 2507.

The court concludes that, quite apart from the cause and prejudice standard, review of petitioner's claims is necessary to prevent a miscarriage of justice. Thus, in accord with the congressional mandate to "dispose of the matter as law and justice require," 28 U.S.C. § 2243, the case is remanded for a new trial.

### CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment is denied. Petitioner's motion for summary judgment is granted. Petitioner shall be released unless the state retries him within 90 days.