**People of the State of Illinois, Plaintiff-Appellee, v. Kenneth Eickert, Defendant-Appellant.**

**Gen. No. 52,828.**

First District, Third Division.

May 21, 1970.

■

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Kenneth Eickert was convicted in a jury trial of armed robbery and sentenced to a term of seven to ten years in the penitentiary. He contends he was not brought to trial within the time required by statute, that his constitutional right against double jeopardy was violated, and that comments by the court during the trial and by the prosecutor in the final argument deprived him of a fair trial.

Shortly after 1:00 a. m. on January 3, 1967, two men entered a Chicago tavern owned by Josephine Tripoli. They brandished pistols and announced, "This is a stick-up." Mrs. Tripoli, the bartender, and two of the five patrons who were present identified one of the men as the defendant Eickert. While his partner stood in the doorway, Eickert went around the bar and ordered Mrs. Tripoli to open the cash register. He took approximately $200 from the drawer and then ordered the patrons to place their money on the bar. One patron had no money; Eickert struck him on the head with his gun. He took money from the other people sitting at the bar and, after saying "Take a good look at me and tell the cops," fled.

The defendant did not take the stand but two witnesses testified in his behalf. They said they were employees of another tavern and worked there over the New Year's holiday during which the Tripoli robbery took place. This

tavern was in the same building in which Eickert roomed. They testified that he was around the tavern from 10:00 a. m., January 2nd, to 4:00 a. m., January 3rd, and that about one hundred people came in and out of the tavern over the eighteen-hour period.

The defendant's first two contentions, that he was not brought to trial within 120 days of his arrest and that he was subject to double jeopardy, arise from the fact that he was tried twice for the Tripoli robbery. The jury was unable to agree in the first trial and a mistrial was declared.

██ Section 9, Article II of the Illinois Constitution declares that a person accused of crime has the right to a speedy trial. Section 103–5(a), chapter 38, Ill Rev Stats 1967, implements this guarantee by providing:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant. . . ."

The first trial commenced after the defendant had been in custody 108 days. After eight days a mistrial was declared. Ten days later he filed a motion for discharge asserting that more than 120 days (126) had passed from the day of his arrest to the day of the motion, that he was still in custody and had not occasioned any delay. In denying the motion the court said that the State could not be charged with the eight days consumed by the trial and, therefore, only 118 days had elapsed up to the time the motion was made. The court was correct in its computation and in its ruling.

██ After the motion was denied, both sides announced that they were ready for trial, but for some reason the case was continued for ten more days at which time it proceeded to trial. The State claims that the

■■■■■■■■■■

postponement was caused by the defendant; but the abstract does not show this and the State's brief makes no citation to the record. It does not matter, however, whether the defendant or the State was responsible for the continuance. Although the second trial did not start until 136 days after the defendant was taken into custody, only twenty days elapsed between the first and second trials. The State is allowed a reasonable period between a mistrial caused by a hung jury and the next trial. Even if the delay was not attributable to the defendant, the twenty-day interlude was not unreasonable and did not infringe upon his constitutional right to a speedy trial. People v. Gilbert, 24 Ill2d 201, 181 NE2d 167 (1962) ; People v. Mason, 118 Ill App2d 47, 254 NE2d 600 (1969) ; People v. Henry, 68 Ill App2d 48, 214 NE 2d 550 (1966).

■■ The second contention arising from the mistrial is that of double jeopardy. The defendant maintains that being tried a second time for the same offense, after a mistrial was declared for failure of the jury to reach a verdict, placed him in double jeopardy in violation of the Fifth and Fourteenth Amendments to the Federal Constitution and section 10, Article II of the State Constitution. A trial court has the authority to discharge a jury which is unable to reach a verdict and only for an abuse of discretion will this action be reversed. Dreyer v. People, 188 Ill 40, 58 NE 620 (1900), affd 187 US 71. In United States v. Perez, 22 US (9 Wheat) 579 (1824), it was held that the constitutional protection against double jeopardy is not violated by a second trial if the jury was discharged in the first trial because it was unable to reach a verdict. The courts of Illinois have adopted this view. E. g., People v. Nilsson, 44 Ill2d 244, 255 NE2d 432 (1970) ; People v. DeFrates, 395 Ill 439, 70 NE2d 591 (1946) ; Dreyer v. People, supra. In view of these decisions Eickert's claim that he was placed in double jeopardy cannot be sustained.

At the beginning of the trial the judge said to the jurors, "Good afternoon, ladies and gentlemen. Please be seated. How did you find the lunch over at the County Jail, all right?" The jurors responded, "Very good," and the judge remarked, "I have been told you get a little different meal than the prisoners, I am not sure about that but Mr. Eickert could probably tell you." This remark, intended as a pleasantry, evoked a motion for a mistrial. The defense argued that it prejudicially suggested that the defendant was in jail. In this court the argument is expanded. It is now asserted that the comment also could have suggested that the defendant was incarcerated for another crime, that he had spent time in jail because of prior convictions, that no bond had been set because he was a dangerous person, or that he was too poor to make a bond and therefore more likely to commit robbery.

The following day the judge offered to clarify his remark. He said that, although he thought it very unlikely that his statement could have been misapprehended, he was willing to instruct the jury that the defendant's incarceration was solely for the purpose of awaiting the outcome of the trial. The defendant's counsel replied that he had no objection to the instruction if the court wanted to give it but that he would not request it—that his motion was for a mistrial. The instruction was not given.

■ While the trial court's remark was unfortunate, it was far from prejudicial. A defendant who is not released on bond is guarded by bailiffs while he is on trial; when entering or leaving the courtroom he is accompanied by a bailiff. This unavoidably occurs in the presence of the jury. The jury is aware that the defendant is in custody and must infer that he is there because he is unable to make bond. This can generate as much sympathy as prejudice. The court's innocent comment carried no implication that the jury could not have

grasped by the mere observation of the proceedings taking place before it.

Eickert complains that the prosecution committed reversible error during closing argument. The defense counsel noted in his own final argument that although the prosecution had stated it might call certain police officers to the stand, they were not called. He then said, "They did not call these witnesses. They did not call a lot of witnesses. And I ask you, ladies and gentlemen, to answer in your own minds why they did not call these witnesses." The defendant's attorney then argued as to the alibi witnesses who could have testified for the defendant, "He wants me to bring in 20 people when, in fact, I do not have to bring in a single one. But we brought in two people." In his reply the prosecutor said:

"... where are all those other people, hundreds of people in that place, by their own—"

Defendant's Attorney: "Objection, your Honor, and the defense does not have to prove a thing."

Prosecutor: "You brought it up."

Defendant's Attorney: "I do not have to bring in anybody and he knows it."

Prosecutor: "These are two friends of his. Where are the other friends that may testify to his whereabouts, as to whether or not he was there? That is not hundreds of other people, these two, the business people that run that place bring a cloak around him with a phony alibi."

The court did not sustain the defendant's objection. Eickert contends this was error because the burden of proof was shifted to him.

■■ The defense opened the door for the prosecutor's rejoinder by commenting upon the State's failure to produce all of its own witnesses. Furthermore, if a

400

defendant presents evidence of his activities with witnesses during the time the offense is supposed to have occurred, the State may comment on his failure to produce them. People v. Williams, 40 Ill2d 522, 240 NE2d 645 (1968), cert denied, 393 US 1123 (1969); People v. Swift, 319 Ill 359, 150 NE 263 (1925); People v. Sanford, 100 Ill App2d 101, 241 NE2d 485 (1968). The prosecutor urged the jury to consider the fact that while 100 people were in the tavern where Eickert was said to have been during the days of January 2nd and 3rd, only two testified. These potential witnesses were available to the defendant and not to the State. It was not argued that they would have testified adversely to him. The prosecutor's comment was not error.

The judgment is affirmed.

Affirmed.

SCHWARTZ and McNAMARA, JJ., concur.