THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT BLEIMEHL, Defendant-Appellant.

(No. 55531;

First District—December 8, 1972.

Carl T. Robinson, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Edward B. Mueller, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

OFFENSE CHARGED

Robbery. Ill. Rev. Stat. 1967, ch. 38, par. 18—1.

JUDGMENT

After a jury trial, defendant was found guilty and sentenced to a term of not less than three nor more than seven years.

CONTENTIONS RAISED ON APPEAL

1. Defendant was improperly held accountable for the acts of an unidentified accomplice.

2. The court improperly admitted into evidence a "mug book" which included defendant's picture.

3. The State's closing argument was improper.

4. Defendant was not proved guilty beyond a reasonable doubt.

EVIDENCE

*Frank Gazarek,* for the State:

At about 12:40 P.M. on March 9, 1969, a Sunday afternoon, he was returning home after having mailed some letters. He was walking east on the north side of 14th Street toward Lombard Avenue in Cicero, Illinois. It was a clear, sunny day, and the lighting conditions were per-

fect. When he reached Harvey Avenue, he observed two men about a quarter of a block north on Harvey walking toward him, but noticed nothing unusual about them. As he crossed Harvey Avenue and continued walking east on 14th Street, he knew that the two men had turned onto 14th Street behind him because their footsteps got louder. As he neared Lombard Avenue, one of the two men caught him around the neck from behind with his left arm, and the other man jumped in front of him. He said, "What is this, a joke?" and the man behind him answered, "Just keep your mouth shut." He could feel that this first man was wearing a leather jacket. The second man, standing about two feet in front of him for two or three minutes, was white, clean-cut, about 34 years old, about 5' 10" tall, and wearing a hip-length leather jacket over a white shirt. His dark hair was combed back and he had sideburns down to the bottom of his ears.

The man who had him caught from behind lifted the complainant's topcoat and took his wallet. The man in front of him just stood and stared. Just as the witness' wallet was being taken, one of his neighbors pulled up across the street. The man in front of him saw the car stop and said, "We better get going," and the two began running east on 14th Street toward Lombard Avenue. He did not notice whether either of them limped. The neighbor jumped out of his car and started to chase the two fleeing men. When the two men got to Lombard Avenue, they turned left and ran north on Lombard about half a block and then got into a parked car. Since Lombard is a one-way street going south, they had to drive back toward 14th Street. He and the neighbor were standing at the intersection of 14th and Lombard when the car passed them. The neighbor noted the license number of the car, and the witness saw that the driver was the same man who had been standing in front of him while his wallet was being taken. There was another man in the car next to defendant, but he was slumped down in the seat, and he could not see him too well.

The police were notified, and when two police squad cars arrived at about 1:00 P.M. that same day, he and his neighbor gave the police the license number of the car and a description of only one of the two men, as he never had an opportunity to view the facial characteristics of the man who had been behind him.

On March 19, 1969, two police officers came to his home with a "mug book" and asked him to look through the pictures to see if he could recognize either of his assailants. He identified the second picture in the book, a picture of defendant, as being the person who had stood in front of him during the incident.

He saw defendant again when the case was called in the Oak Park

court, and pointed him out at that time. He was sure he was the man. He never identified defendant from a line-up.

The "mug book" was introduced into evidence at trial after he again identified defendant's picture and pointed out that when he had first identified it for the police officer, he had placed his initials on the back of the photo, and they were still there. He also made an in-court identification of defendant testifying that he was positive defendant was the man who had stood in front of him when the robbery took place.

*Leo DiPompeo,* for the State:

He is a truck driver who lives across the street from Gazarek. On March 9, 1969, he was driving home and noticed three men scuffling across the street. Thinking it was mere horseplay, he got out of his car and started toward his home. He did not see any of the three men running until Gazarek walked up to him and said, "They got my wallet." Then he ran to the intersection of 14th and Lombard and saw two men running up the street. One was wearing a brownish waist-length jacket and the other a red sweater or shirt. He did not see either of them limp. He watched as they got into a parked car about three-quarters of a block north of the intersection. He continued to watch as they drove south on Lombard, and he noted the license plate number of their car. The car did not seem to be speeding, and he did not hear any tire squeals. He ran to his home, wrote down the license number, and called the police. He never saw the faces of either of the two men and did not identify defendant in court.

*Dennis Kovarik,* for the State:

He is a detective with the Berwyn Police Department. On March 9, 1969, he was assigned to investigate the robbery of Frank Gazarek from whom he had received a description of the offenders and the license plate number of the robbers' car. On March 16, 1969, he received from the office of the Secretary of State the information that defendant was the owner of the car with the plate number in question. He contacted the Chicago Police Department and obtained a picture of defendant. He put this photograph in the "mug book" and then, on March 19, 1969, he went to Gazarek's home to see if he could identify either of the robbers from the pictures in the book. Gazarek immediately identified a picture of defendant as that of the person who had stood in front of him when the robbery occurred. The witness and Gazarek both placed their initials on the back of the photograph selected.

Later that same evening, Gazarek signed a complaint charging defendant with robbery, and an arrest warrant was issued. He then went to defendant's home, but was unable to make the arrest as defendant was not there.

*Edward Pabst,* for the State:

He also is a detective with the Berwyn Police Department. On March 19, 1969, he and his partner, Officer Kovarik, went to the home of the complainant with the "mug book." On March 24, 1969, he saw defendant in the Eighth District Chicago Police Station, at which time he arrested him. He had the opportunity to observe defendant walking, and he was not limping and did not complain about any ailment. After making the arrest, he made no further investigation.

*Robert Bleimehl, Sr.,* for the defense:

He is defendant's father. On January 26, 1969, his son injured his knee very badly and, as a result, he walked with the aid of crutches during the remaining part of January and during the two months of February and March.

*Laurie Lodl,* for the defense:

She lives in the same apartment as defendant. On January 26, 1969, she was with defendant when he fell on the ice and injured his knee. He was on crutches for about three months. Although she was the person who returned the crutches to the doctor, she could not remember the date, but knew it was before the police came to the apartment asking for defendant.

On March 9, 1969, defendant came home from his work as a bartender at 5:00 A.M., gave her some money for housekeeping, and then went to bed until about 9:00 A.M. She did not see him again that day until 5:00 P.M., when he came home for supper. He was sober at that time.

On March 16, 1969, a police officer came to the building, showed her a picture of defendant, and asked if he was at home. She told them he was not, and they left. When she saw defendant the next day, she told him that the police had been looking for him, and to go and find out what was wrong.

On March 28, 1969, she was present at defendant's hearing in the Oak Park court. Defendant was not on crutches when he was in the court-room on that date, but he was limping.

*Donald Hammond,* for the defense:

He is the manager of the restaurant-lounge which employed defendant as a bartender for about a year prior to the incident in question. Before March 9, 1969, defendant had been off for a while because of an injury, but as of that date, he had been back at work for one week and was not on crutches. On March 9, 1969, he was paid when he left work at 4:00 A.M. He was not on crutches then nor when he came back that afternoon to ask for some more time off.

OPINION

Defendant's first contention is that he was found guilty by association

because he was charged with and convicted of robbery even though no testimony was introduced at trial to show any participation on his part in the action of the person who physically committed the robbery.

■■ This argument is not persuasive in the light of Ill. Rev. Stat. 1967, ch. 38, par. 5—2(c) which provides:

"A person is legally accountable for the conduct of another when:

\* \* \*

Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense \* \* \*."

Illinois courts have held that one may aid and abet without actually participating in the overt criminal act. "\* \* \* if the proof shows he was present at the crime without disapproving or opposing it, the trier of fact may competently consider this conduct *in connection with other circumstances* and thereby reach a conclusion that such person assented to the commission of the criminal act, lent his countenance and approval and was thereby aiding and abetting the crime." (Emphasis added.) *People v. Richardson,* 32 Ill.2d 472, 477, 207 N.E.2d 478, 481, U.S. *cert.* den. 86 S.Ct. 1935, 384 U.S. 1021, 16 L.Ed.2d 1023, U.S. rehearing den. 87 S.Ct. 17, 385 U.S. 891, 17 L.Ed.2d 124.

■■ In the instant case there were a number of "other circumstances" which factually fortified this statement of the law in regard to defendant. He stood in front of the victim throughout the robbery, thereby shutting off that avenue of escape had the victim broken loose from the accomplice. He said to his companion, "We better get going," when he saw the car stop across the street. The two men fled the scene together and were seen getting into the same car. It was defendant who drove the automobile from the scene with the unidentified assailant as a passenger. All such evidence tended strongly to prove that defendant was much more than an innocent bystander; that he had, in fact, lent his approval to the crime of the robbery by aiding and abetting in the commission. Such evidence is sufficient to sustain his conviction as a principal for the crime committed by the unidentified accomplice. *People v. Littleton,* 113 Ill.App.2d 185, 189, 252 N.E.2d 77, 79.

■■ Defendant next contends that the admission into evidence and the sending into the jury room of the "mug book" from which the complainant had identified defendant's picture was prejudicial in that it allowed the jury to infer that defendant was a habitual criminal. Defendant's objection went not to defendant's individual picture, but to the volume itself. We see the admission of the entire volume as an advantage to defendant, since only in that way can the jury see just how fair or unfair

the identification procedure was by comparing defendant's characteristics with those of the other men there pictured. Even had defendant objected to introduction of his individual picture, the result would be the same, for in *People v. Maffioli*, 406 Ill. 315, 94 N.E.2d 191, the defendant's picture was allowed to be introduced into evidence despite the fact that it bore a police department number and date. That court held that the photograph was not prejudicial as constituting evidence of other offenses since it was relevant to the issue of identity. The book in the instant case was properly admitted for the same purpose. See also *People v. Johnson*, (1971), 133 Ill.App.2d 370.

■■ Defendant argues that certain statements made by the State's Attorney in his closing argument to the jury were prejudicial in that the comments related to the fact that the people who were to testify in support of defendant's alibi did not take the stand. Defendant cites three specific comments as being improper. However, during the trial, defense counsel objected to only one of the allegedly improper comments, and that objection was sustained. And the impropriety, if any, of the remaining two comments need not be discussed as the issue was not preserved in the trial court. (*People v. Hampton*, 44 Ill.2d 41, 46, 253 N.E.2d 385, 387.) Even if the question had been preserved, our conclusion would be the same since no comment was made by the prosecutor as to defendant's failure to testify, but only as to the failure of his alibi witnesses to testify. If a defendant presents evidence of his activities with witnesses during the time the offense is supposed to have occurred, the State may comment on his failure to produce such witnesses. *People v. Eickert*, 124 Ill.App.2d 394, 400-401, 260 N.E.2d 465, 468-469.

■■ Lastly, defendant contends he was not proved guilty beyond a reasonable doubt. Defendant was positively identified by a credible witness, and the testimony of this single witness is sufficient to sustain a conviction even if such testimony is contradicted by the accused. (*People v. Harris*, 70 Ill.App.2d 173, 179, 217 N.E.2d 503, 506-507.) In any event, the question of the credibility of the witnesses is a matter for the trier of fact, and its finding of guilty will be disturbed only where the evidence is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt. (*People v. Hampton*, 44 Ill.2d 41, 45, 253 N.E.2d 385, 387.) Such is not the case here.

The judgment is affirmed.

Affirmed.

LORENZ, P. J., and DRUCKER, J., concur.