**Robert Lee WILLIAMS,
Petitioner-Appellee,**

v.

**Michael LANE, Director, Department of Corrections, and Neil F. Hartigan, Attorney General of the State of Illinois, Respondents-Appellants.**

No. 86–2842.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1987.

Decided Aug. 13, 1987.

Rehearing Denied Sept. 3, 1987.

Alison Edward, Asst. Pub. Defender, Chicago, Ill., for petitioner-appellee.

Sally L. Dilgart, Office of Illinois Atty. Gen., Chicago, Ill., for respondents-appellants.

Before CUMMINGS and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Petitioner was convicted in an Illinois circuit court of rape and unlawful restraint and sentenced to terms of imprisonment of ten and three years respectively. The Illinois Appellate Court (1st Dist.) affirmed the rape conviction but vacated the conviction and sentence for unlawful restraint. The Illinois Supreme Court subsequently denied leave to appeal. Petitioner proceeded to file a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254. Petitioner alleged that his constitutional rights were violated when the prosecution improperly commented on his failure to testify. The district court granted the writ and respondents appeal. For the reasons set forth below, we affirm.

## I. *Statement of Facts*

The following evidence was presented at the 1983 trial. Diane Williams, the complaining witness and no relation to petitioner, testified that she had previously hired petitioner, an auto mechanic, to fix her car, but she denied that she had ever seen him socially. She testified that on the night of November 30, 1982, petitioner accompanied her and another woman to a disco lounge but was refused entrance because he was not properly dressed. He agreed to return at 4:00 a.m. to drive the women home, which he did, and they tried unsuccessfully to find another party. Diane's friend then left with another man, and petitioner offered to drive Diane home. Diane testified that at approximately 5:00 a.m. petitioner stopped his car on the shoulder of the Dan Ryan Expressway and ordered her to have sexual intercourse with him. She apparently refused and a wrestling match en-

sued during which petitioner took her head and forcibly threw it against the car door. Diane testified that petitioner then pulled out a razor which he held at her throat and proceeded to rape her. Afterward petitioner drove to a gas station and left her alone in the car for a few minutes. She remained in the car until he returned and drove her home.

When Diane arrived at her home, she awoke her mother and told her that she had been raped. Her mother called the police, who came and took Diane to a hospital to be examined. Diane's mother testified at trial that Diane was crying, nervous, and very shaken up when she arrived home after the alleged rape. A crime lab technician testified that she had found the presence of spermatozoa in vaginal smears taken from Diane at the hospital. The parties stipulated that the doctor who examined Diane found a bruise on her wrist but no evidence of vaginal trauma. The parties also stipulated to the police report describing Diane as not injured and to a hospital report which stated that "patient [Diane] denies injury."

Petitioner did not testify at trial. Two friends of petitioner, Vanessa Baker and Vernita Kendall, testified for the defense. Vanessa testified that she had introduced Diane to petitioner prior to the time that Diane hired petitioner to repair her car. She also testified that she had seen Diane and the petitioner together at a card game at Diane's mother's house and that she had joined them later that same evening to go to a Halloween party. Vernita corroborated Vanessa's testimony as to the card game and the later party. Both women admitted on cross-examination that Diane and the petitioner were not dating.

As noted above, petitioner was convicted of rape. This appeal concerns nine remarks made by the prosecution during its closing argument regarding petitioner's failure to testify. The first remark was made during the prosecution's initial summation. The prosecutor told the jury that in considering the events that occurred on the night of the alleged rape:

You cannot guess, you cannot conjecture as to what happened out there. The evidence in this case is uncontradicted, unrebutted and undisputed.

(Tr. 217). A second prosecutor made eight references in his rebuttal argument to the unrebutted character of the prosecution testimony. Discussing the evidence presented at trial, the prosecutor noted:

Counsel [for the defense] brought you a list of things that he says discredits the testimony of Diane Williams. Let's go over them again and I agree, the issue is whether you believe Diane.

Remember her uncontradicted and unrebutted testimony?

(Tr. 228). Referring to the petitioner's use of force, the prosecutor said:

And remember her testimony, the uncontradicted, unrebutted testimony of Diane Williams?

(Tr. 229). He continued:

Nowhere in the instructions ... does it say that she has to resist. By force and against her will, and we proved that beyond a reasonable doubt. She told it to you and nobody else told you anything different.

(Tr. 229–230). The trial judge certified that the prosecutor punctuated his remark by pointing at the witness stand. (Certification by Trial Court dated Nov. 21, 1983).

At this point, the defense attorney objected. The court took note of the objection but allowed the prosecutor to proceed with his argument. The prosecutor then again pointed to the witness stand and asked:

Where is the evidence that this was a date? Where is the evidence? Who got up on the witness stand and told you that these two were dating?

(Tr. 230). This statement prompted another objection by the defense. This time the court held a side-bar conference off the record during which the prosecutor was admonished not to comment on petitioner's failure to testify. The trial judge certified that the prosecutor stated he would not make any further remarks. Notwithstanding this statement, the prosecutor proceeded to make four additional references to

the uncontradicted, unrebutted, and undisputed nature of Diane's testimony (Tr. 231, 233, 235, 236–237). The defense attorney made no objection to these last four statements.

The petitioner filed a motion for a new trial in which he alleged that the assistant state's attorneys made improper references during closing argument to his failure to testify. The trial court denied the motion on the ground that the jury had been properly instructed on the petitioner's right not to testify, the presumption of innocence, and the prosecution's burden of proof, and furthermore counseled that they should reach their verdict based on the evidence presented and not the arguments of counsel (Tr. 271).

The Illinois Appellate Court affirmed petitioner's rape conviction. Although the major portion of petitioner's brief on direct appeal was devoted to the argument that the prosecutors committed reversible error by making nine separate references during closing argument to the uncontradicted nature of their case, all of which were calculated to draw the jury's attention to petitioner's failure to testify, the Appellate Court's unpublished opinion made no mention of it. Petitioner therefore filed a petition for rehearing with the court which focused primarily on the prosecutors' improper comments. Five months later the Appellate Court issued a supplemental order, also unpublished. The court incorrectly found that there had been five improper comments, when the record clearly revealed nine such comments, and noted only one objection, when again the record clearly revealed two objections. Despite suggesting that "from the nature and number of the comments ... they could have been calculated to direct the attention of the jury to the fact that defendant did not testify," the court held that petitioner had waived any error by failing to object and that the comments did not deprive petitioner of a fair trial (Resp.App.B). The court did not evaluate the two statements to which the defense attorney did object, which were two of the more egregious comments punctuated by the prosecutor's pointing at the witness stand.

## II. *The District Court's Opinion*

Having been unsuccessful in securing any relief in state court, petitioner proceeded to file a petition for a writ of habeas corpus in the district court. The sole argument raised in the petition was that the prosecutors had improperly commented on petitioner's failure to testify, thereby violating his constitutional rights under the Fifth and Fourteenth Amendments. Respondents vigorously contested the petition on the ground that the district court was barred from entertaining petitioner's argument by virtue of the Illinois Appellate Court's determination that the argument had been waived by the petitioner as a result of his failure to object to the improper comments at trial. Although agreeing with petitioner that the Illinois Appellate Court had misread the trial record, the district court nevertheless felt bound by the Illinois court's determination that a procedural default had occurred as a matter of Illinois law. 645 F.Supp. 740, 746 (N.D.Ill. 1986). It went on to find, however, that petitioner had satisfied both the "cause" and "prejudice" components of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and that it could therefore reach the argument notwithstanding the procedural default. The court found "cause" for petitioner's failure to object in what it termed the prosecution's "double-cross," that is, the fact that the second prosecutor promised the trial judge during the side-bar conference that he would refrain from any further comment on petitioner's failure to take the stand, but then flagrantly disregarded his agreement with the court and went on to make four additional objectionable statements. 645 F.Supp. at 747. Considering the merits of petitioner's claim, the court found that the prosecution's comments were improperly calculated to call attention to petitioner's failure to testify and held that his Fifth Amendment right to remain silent had been violated. Concluding that the error could not be construed as harmless, the court granted the writ and ordered a new trial.

## III. *Procedural Default*

■ Failure to comply with a state procedural rule which bars consideration of

the merits of a criminal defendant's challenge to his conviction in state court ordinarily precludes federal habeas review of a claim, absent a showing of cause for, and prejudice resulting from, the procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506; *Phillips v. Lane*, 787 F.2d 208, 211 (7th Cir.1986). A federal court sitting in habeas corpus is required to respect a state court's finding of waiver or procedural default under state law. Federal courts do not sit to correct errors made by state courts in the interpretation and application of state law. See *Henry v. Mississippi*, 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965); *Herbert v. Louisiana*, 272 U.S. 312, 316; see also *Cole v. Young*, 817 F.2d 412, 429–31 (7th Cir. 1987) (dissenting opinion) (collecting cases).

Nevertheless there are federal limits on a state's ability to construct procedural rules, the failure to comply with which precludes consideration of the merits of a claim in a federal habeas corpus proceeding. A state court's rejection of a federal constitutional claim because of a procedural default bars federal habeas review of that claim only if state law furnishes an independent and adequate procedural ground for the court's ruling. *Ulster County Court v. Allen*, 442 U.S. 140, 148–54, 99 S.Ct. 2213, 2220–23, 60 L.Ed.2d 777 (1979); *Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506; *Henry v. Mississippi*, 379 U.S. 443, 447, 85 S.Ct. 567 (state procedural ground is "adequate" only where "the State's insistence on compliance with its procedural rule serves a legitimate state interest"). The Supreme Court has on several occasions found state procedural rules to be inadequate to preclude federal review of constitutional claims where the procedural requirement was novel or sporadically applied. See, *e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457–58, 78 S.Ct. 1163, 1169–70, 2 L.Ed.2d 1488 (1958) (novel state procedural bar not considered independent and adequate where criminal defendant could not fairly be deemed to have been apprised of its existence and thus would not be permitted to thwart review in federal court); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 301, 84 S.Ct. 1302, 1310, 12 L.Ed.2d 325 (1964) (further proceedings in same case); *Barr v. City of Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766 (1964) ("We have often pointed out that state procedural requirements which are not strictly or regularly followed cannot deprive us of the right of review."); *James v. Kentucky*, 466 U.S. 341, 348–49, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984) (only "firmly established and regularly followed state practice can prevent implementation of federal constitutional rights"); see also *Spencer v. Kemp*, 781 F.2d 1458, 1470–71 (11th Cir.1986) (novel or sporadically applied state procedural grounds inadequate to preclude federal review of federal constitutional claims); *Adams v. Dugger*, 816 F.2d 1493, 1497 (11th Cir.1987) (Florida Supreme Court's holding that habeas petitioner's constitutional claim was barred for failure to raise it on direct appeal "represents application of a procedural bar with regard to a type of claim that Florida does not regularly and consistently bar."). The Supreme Court has stated with some frequency that to insist on compliance with novel or unevenly applied state procedural rules would "force resort to an arid ritual of meaningless form." *Staub v. City of Baxley*, 355 U.S. 313, 320, 78 S.Ct. 277, 281, 2 L.Ed.2d 302, quoted in *Wright v. Georgia*, 373 U.S. 284, 291, 83 S.Ct. 1240, 1245, 10 L.Ed.2d 349 (1963); *James v. Kentucky*, 466 U.S. 341, 349, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984).

■ In determining that the petitioner had waived any error resulting from the prosecutors' improper comments on his failure to testify, the Illinois Appellate Court made three separate rulings. The first, an implicit ruling by the court, was that petitioner had failed to preserve for review the one prosecutor's statement to which petitioner raised a contemporaneous objection which prompted the side-bar conference during which the trial judge admonished the prosecutor to refrain from further comments on petitioner's failure to take the stand. The second was that petitioner had failed to preserve for review the other statement to which he raised a con-

temporaneous objection because "no ruling thereon was made nor requested by defendant" (Resp.App.B). The final ruling by the court was that petitioner had failed to preserve for review the other four (in point of fact seven) statements to which he did not object.

It is well settled in Illinois that when a defendant fails to make a timely objection at trial or in the post-trial motion, irregularities in the closing argument are ordinarily deemed waived on appeal. See *People v. Owens,* 102 Ill.2d 88, 104, 79 Ill.Dec. 663, 670, 464 N.E.2d 261, 268 (1984); *People v. Jackson,* 84 Ill.2d 350, 358, 49 Ill. Dec. 719, 723, 418 N.E.2d 739, 743 (1981); *People v. Skorusa,* 55 Ill.2d 577, 585, 304 N.E.2d 630, 634 (1973); *People v. Arnett,* 139 Ill.App.3d 342, 344, 93 Ill.Dec. 922, 923, 487 N.E.2d 747, 748 (4th Dist.1985); *People v. Hartfield,* 137 Ill.App.3d 679, 686–87, 92 Ill.Dec. 281, 286, 484 N.E.2d 1136, 1141 (1st Dist.1985); *People v. Bleimehl,* 9 Ill. App.3d 273, 279, 292 N.E.2d 60, 64 (1st Dist.1972). It is clear from the record that petitioner complied with both of these requirements with respect to the second prosecutor's comment immediately prior to the side-bar conference (Tr. 230). Petitioner made a timely objection which was sustained during the side-bar conference when the trial judge admonished the prosecutor, and he raised the prosecution's improper references during closing argument to his failure to testify as one of six grounds in his motion for a new trial. An examination of the appellate brief and petition for rehearing filed by petitioner with the Illinois Appellate Court reveals that both the statement and the contemporaneous objection were properly raised and argued before that court. We are thus at a loss to imagine, and respondents have failed to explain, what state procedural ground the Illinois Appellate Court could possibly have invoked in holding that petitioner's claim as concerning that particular statement had been waived.

In *Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978), the petitioner had raised a constitutional claim of error in his brief submitted to the Alabama appellate court on direct appeal. That court's opinion affirming the criminal conviction made no reference to the claim. In denying petitioner's subsequent habeas corpus petition, the district court assumed on the basis of the appellate court opinion's silence that petitioner had failed to raise the claim before the Alabama courts and accordingly ruled that he had not complied with the exhaustion of available state remedies requirement found in 28 U.S.C. § 2254(b). The Supreme Court reversed, holding that "whether the exhaustion requirement ... has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court." *Id.* at 333, 98 S.Ct. at 599.

This same principle must apply to a state court's determination of procedural default where the court chooses to ignore the fact that the petitioner has fully complied with the state's articulated procedural rules and simply deems the petitioner's claim waived. See *Cooper v. Wainwright,* 807 F.2d 881 (11th Cir.1986) (Florida Supreme Court's ruling on collateral appeal that petitioner's claim was procedurally barred because it had not been presented on direct appeal did not preclude federal habeas review where the record clearly revealed that Florida Supreme Court had in fact reached the merits of the claim on direct appeal). We therefore conclude that the Illinois Appellate Court's determination of waiver with respect to the statement immediately preceding the side-bar does not rest on an independent and adequate state procedural ground and consequently does not preclude federal habeas review.

■ We next consider the Illinois Appellate Court's second waiver ruling, namely that the statement which prompted petitioner's first objection was not preserved for review because the trial judge did not rule on the objection and the defendant did not request a ruling. The transcript of the closing argument indicates that when petitioner objected to the second prosecutor's statement that "[s]he told it to you and nobody else told you anything different" (Tr. 230), the trial judge replied, "The ob-

jection is noted, Counsel," but allowed the prosecutor to continue, presumably overruling the objection. In response to an earlier objection by petitioner during closing argument on an unrelated legal ground, the court had expressly responded, "Counsel, your objection is noted. He [the prosecutor] may argue" (Tr. 228). Respondents, adhering to the position taken by the state court, maintain that petitioner forfeited appellate review of any error in the statement because the trial judge did not use the specific word "overruled" in responding to the objection and petitioner failed to request the court to do so. Respondents cited no support for this dubious proposition in their initial appellate brief to this Court and we therefore directed them to file a supplemental brief on the issue. The cases cited therein do not convince us that Illinois law requires a trial judge to use the words "sustained" or "overruled" in response to an objection in order for an issue to be preserved for review.

The cases cited by respondents stand for the proposition that the party making an objection bears the burden of taking steps to ensure that the court takes note of the objection and, where the court postpones or reserves its ruling, that the court subsequently rules on the objection. See, *e.g., People v. Hall,* 114 Ill.2d 376, 413–14, 102 Ill.Dec. 322, 337–38, 499 N.E.2d 1335, 1350–51 (1986) (error waived where the judge did not rule on defendant's objection and instead ordered a recess and defendant failed to pursue the objection when court reconvened); *People v. Caballero,* 102 Ill.2d 23, 38, 79 Ill.Dec. 625, 631, 464 N.E.2d 223, 230 (1984) (error waived when judge did not rule on objection and defense counsel did not request a ruling or call the judge's attention to the fact that no ruling had been requested); *People v. Waller,* 67 Ill.2d 381, 385–87, 10 Ill.Dec. 517, 519, 367 N.E.2d 1283, 1285 (1977) (defendant failed to preserve objection where the court reserved its ruling pending defendant's submission of a brief in support of the objection and the defendant failed to submit the requested brief and did not insist on a subsequent ruling); *People v. Todorovic,* 53 Ill.App.3d 1, 7–8, 10 Ill.Dec. 876, 881,

368 N.E.2d 471, 476 (1st Dist.1977) (error waived where trial court failed to rule on defendant's objection and defendant did not pursue his objection in an effort to obtain a ruling). In contrast, in the present case the trial court clearly took note of the petitioner's objection and, given the tenor of the court's response to an earlier objection, in effect overruled the objection by allowing the prosecutor to continue his argument. At worst the record supports a reading that the court reserved its ruling on petitioner's objection but then sustained the objection during the side-bar conference after the petitioner had again objected on the very same ground to the prosecutor's next remark.

Petitioner took all reasonable steps to call the court's attention to his objection and, whatever reading one gives to the record, did in fact secure a ruling. To the extent that the Illinois Appellate Court determined that the objection had been waived, its ruling is not supported by an independent and adequate state procedural ground and hence cannot bar habeas review by a federal court.

■ We finally consider the Illinois Appellate Court's third ruling on procedural default, namely that petitioner did not preserve for review those statements in the closing argument to which he did not specifically object. Petitioner contends that the two objections which he did make sufficiently apprised the trial judge of the deficiencies in the prosecution's closing argument so as to preserve for review all objectionable statements focusing on the petitioner's failure to testify. Respondents strictly invoke the contemporaneous objection rule and maintain that a party must object to each and every statement it deems objectionable in a closing argument or forfeit appellate review of those statements not objected to. To resolve this controversy we must resort to Illinois law dealing with the contemporaneous objection rule in the particular context of the closing argument. As is the case in diversity jurisdiction, we must apply the state law that would be applied by the Illinois Supreme Court. Intermediate appellate

court decisions are often helpful but not binding evidence of what the Illinois Supreme Court would do in a similar case. See *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886; *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759, 761 (7th Cir.1986); *Hill v. International Harvester Co.*, 798 F.2d 256, 261 n. 12 (7th Cir.1986); *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat'l Ins. Group*, 750 F.2d 619, 624–25 (7th Cir.1984); *White v. United States*, 680 F.2d 1156, 1160–61 (7th Cir.1982).

The Illinois Supreme Court has not recently had occasion to consider a case in which a party has objected to some but not all objectionable statements in a closing argument. However, in a series of older cases, the court did hold that the fact that a party objected to some portion of a closing argument did not preserve other objectionable statements therein, even those implicating the same legal ground, for review. See *People v. Skorusa*, 55 Ill.2d 577, 584–85, 304 N.E.2d 630, 634 (1973) (although defendant objected to certain remarks during closing argument which were intended to call attention to the defendant's failure to testify, other portions of the argument commenting on his failure to testify were waived by the failure to make a timely objection); *People v. Nuccio*, 54 Ill.2d 39, 49, 294 N.E.2d 276, 281–82 (1973) (fact that defendant objected to one of a number of improper comments by prosecutor during closing argument did not preserve for appeal the other statements to which no objections were raised); *People v. Hampton*, 44 Ill.2d 41, 46, 253 N.E.2d 385, 387 (1969) (one objection to five statements during closing argument insufficient to preserve the other four statements for review); *People v. Sinclair*, 27 Ill.2d 505, 509, 190 N.E.2d 298, 300 (1963) (defendant's objection to one statement during closing argument did not preserve other remarks to which no objections were made for review). The Appellate Court of Illinois has been in general accord. See *People v. Pleasant*, 88 Ill.App.3d 984, 991, 44 Ill.Dec. 226, 231, 411 N.E.2d 132, 137 (3d Dist.1980) (fact that defendant objected to

two of four allegedly prejudicial remarks during closing argument did not preserve for review the two statements to which no objections were made); *People v. McCoy*, 35 Ill.App.3d 326, 330, 341 N.E.2d 422, 424–25 (5th Dist.1976) (failure to object to four allegedly improper comments during closing argument waived error on appeal even though objection was made to a fifth improper statement); *People v. Bleimehl*, 9 Ill.App.3d 273, 279, 292 N.E.2d 60, 64 (1st Dist.1972) (although defendant objected to one of three allegedly improper comments during closing argument and the objection was sustained, any impropriety in the other two comments was waived by the failure to object in the trial court). Applying the law articulated by these cases, the fact that petitioner objected to two statements during closing argument would not be sufficient to preserve the remaining seven statements for review on appeal.

Petitioner relies on a recent Illinois Appellate Court decision involving a factual situation nearly identical to his. *People v. Bolden*, 152 Ill.App.3d 631, 105 Ill.Dec. 550, 504 N.E.2d 835 (1st Dist.1987). In *Bolden*, the state commented six times during closing argument that the evidence of the defendant's guilt was uncontroverted, but the defendant only objected to two of the six statements. The court held that the defendant should not be precluded from challenging all six statements on appeal because the two objections, taken together with the post-trial motion, alerted the trial judge to the alleged errors and satisfied the purpose behind the waiver rule. *Id.* at 638–39, 105 Ill.Dec. at 556, 504 N.E.2d at 841. Unfortunately, the appellate court in *Bolden* did not mention the earlier decisions reaching the opposite conclusion.

The *Bolden* holding undoubtedly better reflects the reality of the situation confronting a defendant when a prosecutor continuously makes improper remarks during the course of a closing argument. When the prosecution's transgressions are numerous, the defendant has the unenviable choice of either making repeated objections, which not only interrupts the flow of the argument but also serves to emphasize

in the jurors' minds precisely those statements which he finds objectionable, or remaining silent and running the risk that his challenge will be deemed waived on appeal. See *Joseph v. Brierton,* 739 F.2d 1244, 1247 (7th Cir.1984) (objection during closing argument would only have highlighted objectionable part of argument in jurors' minds); *Werner v. Upjohn Co.,* 628 F.2d 848, 854 (4th Cir.1980) (objection during closing argument would only have emphasized the impermissible point and antagonized the jury).

Nevertheless, the Illinois Supreme Court has yet to endorse the position taken by the appellate court in *Bolden,* and we are consequently reluctant to adopt it in the face of directly contrary Illinois Supreme Court precedent, which though dated still appears to be the governing law. See *Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 272 (7th Cir.1983) (federal court cannot follow an intermediate court decision "that is inconsistent with a state supreme court ruling"); but see *Indianapolis Airport Auth. v. American Airlines,* 733 F.2d 1262, 1272 (7th Cir.1984) (federal court may follow state intermediate appellate decision declining to follow old state supreme court decision when federal court is convinced that intermediate court has correctly determined that state supreme court would overrule its decision if it had the opportunity to do so). But we are especially reluctant to follow *Bolden* because it failed to take note of, much less expressly declined to follow, the Illinois Supreme Court's decisions in *Skorusa, Nuccio, Hampton,* and *Sinclair.* We therefore conclude that petitioner waived state appellate review of those statements in the closing argument to which he did not specifically object. If the Illinois Supreme Court determines as a matter of state law that a party must object to each and every objectionable statement in a closing argument in order to preserve those statements for appellate review, then a federal court must adhere to that rule regardless of whether it finds the rule to be wise or well reasoned. See *United States ex rel. Crist v. Lane,* 745 F.2d 476, 482–83 (7th Cir.

1984); *Brown & Williamson,* 713 F.2d at 272.

■ Because as a matter of state law petitioner waived any error in the statements to which he did not object, it is necessary to inquire whether he can demonstrate cause for, and prejudice resulting from, the procedural default under *Wainwright v. Sykes.* In *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397, the Supreme Court explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." As examples of what would constitute cause under this standard the Court suggested a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impossible.

The district court found cause for the petitioner's failure to object in the fact that the second prosecutor continued to make improper comments on the uncontroverted nature of the evidence even though he had promised the court at the side-bar conference that he would refrain from further remarks of that nature. We cannot agree with the district court that this "double-cross" constituted cause for the default. 645 F.Supp. at 747. The fact that the prosecutor represented that he would avoid any objectionable comment in the future in no way lessened the burden on the petitioner to object if the prosecutor failed to adhere to that representation, nor did it in any way impede his ability to do so. If the district court's position were adopted, we would be sanctioning a finding of cause in any case where the prosecutor, after being admonished by the court to refrain from objectionable behavior, disregarded the admonishment and continued to engage in that very same behavior without further objection by the defendant. Such a result would unreasonably enlarge the concept of "cause" and unnecessarily undermine legitimate state procedural rules.

Petitioner has offered no other external factors which might have impeded his counsel's efforts to object to the prosecutor's improper comments during the closing argument. He again emphasizes the dilemma confronting him and his counsel by virtue of the prosecutor's numerous and repeated improper remarks on his failure to testify. While we sympathize with his position, this Court has previously held that "defense counsel's judgment that an objection is inadvisable is not sufficient 'cause' to present a waived issue in the federal courts." *Woodruff v. Lane*, 818 F.2d 1369, 1377 (7th Cir.1987); see *United States ex rel. Crist v. Lane*, 745 F.2d 476, 482–83 (7th Cir.1984).

██ Although the Supreme Court in *Murray v. Carrier* expressed confidence that for the most part "victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard," 106 S.Ct. at 2650 (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783), it did recognize that in an extremely limited number of cases this might not always hold true. Accordingly, it held that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* Independent of its finding of cause and prejudice under *Wainwright v. Sykes*, the district court held that this was the type of extraordinary case contemplated by *Murray v. Carrier* in which it was justified in reaching the merits of petitioner's constitutional claim regardless of the procedural default. 645 F.Supp. at 748. Again we cannot agree with the district court's determination.

Although the evidence against petitioner at trial was not overwhelming, even the district court conceded that it was sufficient to support the conviction. 645 F.Supp. at 744. The prosecutor's allegedly improper remarks "neither precluded the development of true facts nor resulted in the admission of false ones." *Smith v. Murray*, 106 S.Ct. 2661, 2668. Further-more, we cannot say that those remarks may have so perverted the jury's deliberations concerning the ultimate question of guilt or innocence as to result in the "fundamentally unjust incarceration" of one who is actually innocent. *Murray v. Carrier*, 106 S.Ct. at 2654 (quoting *Engle v. Isaac*, 456 U.S. at 135, 102 S.Ct. at 1576).

IV. *References to Petitioner's Failure to Testify*

██ Direct reference by a prosecutor to a defendant's decision not to testify is always a violation of the defendant's Fifth Amendment right against self-incrimination. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; *United States ex rel. Burke v. Greer*, 756 F.2d 1295, 1300 (7th Cir.1985). Indirect references to the defendant's failure to testify are constitutionally impermissible if "the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify." *Burke*, 756 F.2d at 1300 (quoting *United States v. Lyon*, 397 F.2d 505, 509 (7th Cir.1968), certiorari denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117); see *United States v. Bagley*, 772 F.2d 482, 494 (9th Cir.1985), certiorari denied, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986). This Court has on numerous occasions held that prosecutorial references to "undisputed," "unchallenged," or "uncontradicted" testimony were indirect references to the defendant's failure to testify in violation of the Fifth Amendment. See *Burke*, 756 F.2d at 1301–02 (prosecutor made seven references during closing argument to the fact that the evidence was "uncontradicted" and "undenied"); *United States v. Buege*, 578 F.2d 187, 188–89 (7th Cir. 1978), certiorari denied, 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (prosecutor repeatedly used the phrase "uncontradicted testimony" during closing argument); *United States v. Fearns*, 501 F.2d 486, 489–90 (7th Cir.1974) (prosecutor made two references to witness's "undisputed" testimony); *United States v. Handman*, 447 F.2d 853, 855 (7th Cir.1971) (prosecutor argued that testimony of government wit-

ness "remained intact, unchallenged and uncontradicted"); *United States v. Poole*, 379 F.2d 645, 649 (7th Cir.1967) (prosecutor argued that testimony stood "uncontradicted"). While the bulk of these cases involved federal prosecutions, we held in *Burke* that the principles enunciated therein were equally applicable to state cases subject to federal habeas corpus review. 756 F.2d at 1301.

 Prosecutorial references to "uncontradicted" testimony are more readily deemed indirect references to the defendant's failure to testify in cases where it is "highly unlikely that at least a portion of the testimony could have been contradicted by anyone other than the defendant." *Buege*, 578 F.2d at 189. Citing *Handman* and *Poole*, this Court in *Buege* held that "when a prosecutor refers to testimony as uncontradicted where the defendant has elected not to testify and ... he is the only person able to dispute the testimony, such reference necessarily focuses the jury's attention on the defendant's failure to testify and constitutes error." 578 F.2d at 188. Indeed in *Fearns* we admonished prosecutors that they risk reversal by arguing that evidence is undisputed when that evidence is of a kind that could only have been disputed by the defendant had he chosen to testify. 501 F.2d at 490.

 In reviewing the merits of petitioner's Fifth Amendment claim, we are limited to those statements by the second prosecutor which petitioner preserved for review by objecting at trial. In the first of these remarks, the prosecutor told the jury that he had proved beyond a reasonable doubt that Diane Williams had been raped by force and against her will. He then went on to say, "She [Diane] told it to you and nobody else told you anything different" (Tr. 230). There can be little doubt that the prosecutor "manifestly intended" to comment on petitioner's failure to testify. Only petitioner could possibly have rebutted both Diane's version of what happened after he pulled his car over on the shoulder of the expressway and her testimony that she did not consent.

The second statement preserved for review consisted of a series of questions in which the prosecutor essentially asked: "Who got up on this witness stand and told you these two were dating?" (Tr. 230). Respondents contend that the prosecutor was merely emphasizing the fact that although defense witnesses Vanessa Baker and Vernita Kendall had testified that Diane had known petitioner socially prior to the night of the alleged rape, both admitted under cross-examination that the two were not "dating." According to respondents, the jury would have expected these two witnesses, rather than petitioner himself, to have rebutted Diane's testimony that she and petitioner had never dated and had never even known each other socially before the night in question. However, this Court has previously recognized that closing arguments regarding uncontradicted testimony which could have been rebutted by either the defendant or another witness are nonetheless impermissible because they "could have called attention to [the defendant's] failure to testify on any issue—and thus to his failure to contradict much of the testimony which could not have been contradicted by anyone but him." *United States v. Poole*, 379 F.2d at 649 (quoted in *Burke*, 756 F.2d at 1301, and *Buege*, 578 F.2d at 189 n. 1).

The conclusion reached in *Poole* is particularly true here. The prosecution's case consisted principally of the victim's testimony. There was no medical evidence, other than the bruise on Diane's wrist, to corroborate her testimony that she had struggled with petitioner and had been raped at razor point against her will. Although the prosecutor's question could have been directed towards the failure of Baker and Williams to rebut Diane's testimony, no one other than petitioner could have contradicted the large portion of Diane's testimony dealing with what occurred while the two of them were alone. We are also troubled by the prosecutor's explicit reference to "witness stand" and the fact that according to the trial judge the prosecutor punctuated his remark by pointing to the stand. Petitioner was the only other possible defense witness who had failed to

testify, and under these circumstances it is hard to believe that the prosecutor's question and gesture were not calculated to call the jurors' attention to the fact that petitioner had elected not to take the stand, and consequently not "to contradict much of the testimony which could not have been contradicted by anyone but him." *Poole,* 379 F.2d at 649.

The prosecutor's indirect references to petitioner's failure to testify were clearly improper and violated the Fifth Amendment. As in *Burke,* the comments were "likely to cause the jury to view the closing argument as a commentary on the defendant's failure to testify and as a suggestion to view that failure to testify as indicia of guilt." 756 F.2d at 1302.

### V. *Harmless Error*

 Although petitioner has established a constitutional violation, reversal of his conviction is warranted only if the error was not harmless. An error of this sort is not harmless unless the government can prove beyond a reasonable doubt that the jury would have returned a verdict of guilty even absent the prosecutor's unconstitutional remarks. *United States v. Hasting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705; *United States v. Shue,* 766 F.2d 1122, 1132–33 (7th Cir. 1985) (evidence against defendant not so "overwhelming" as to convince court of appeals that the government's comments could not have played a role in the jury's guilty verdicts).

At the time of petitioner's trial Illinois law provided that to prove a charge of rape the state was required to show that the defendant had intercourse with a female, not his wife, by force and against her will. Ill.Rev.Stat. ch. 38, ¶ 11–1 (1983). The uncorroborated testimony of the complaining witness is sufficient to support a conviction for rape if that testimony is clear and convincing. See *People v. Secret,* 72 Ill.2d 371, 376, 21 Ill.Dec. 207, 210, 381 N.E.2d 285, 288 (1978); *People v. Barbour,* 106 Ill.App.3d 993, 999, 62 Ill.Dec. 641, 645, 436 N.E.2d 667, 671 (1st Dist.1982). Otherwise some corroboration is necessary such as a victim's prompt complaint of rape or the presence of spermatozoa in the vaginal smear taken from the complainant. See *People v. Edmond,* 76 Ill.App.3d 540, 546, 32 Ill.Dec. 159, 164, 395 N.E.2d 106, 111 (1st Dist.1979). Diane promptly told her mother that she had been raped after she arrived home, and the police were summoned immediately. In addition, a crime lab technician testified that spermatozoa were present in the vaginal smears taken from Diane at the hospital.

There is no definite standard in Illinois fixing the amount of force required to show nonconsensual intercourse. *People v. Szudy,* 108 Ill.App.3d 599, 606, 64 Ill.Dec. 208, 213, 439 N.E.2d 137, 142 (1st Dist. 1982); *People v. Sims,* 5 Ill.App.3d 727, 729, 283 N.E.2d 906, 908 (1st Dist.1972). Petitioner emphasized at trial that Diane sustained no injuries during the alleged rape, and other than the wrist bruise, the police and hospital reports support this contention. But a victim is not required to subject herself to serious physical harm by resisting in order to demonstrate that she did not consent. *Szudy,* 108 Ill.App.3d at 606, 64 Ill.Dec. at 208, 439 N.E.2d at 142. Consequently, evidence of injury to the victim's body is not necessary to sustain a rape conviction. See *People v. Thomas,* 96 Ill.App.3d 443, 452, 51 Ill.Dec. 849, 856, 421 N.E.2d 357, 364 (1st Dist.1981).

As the district court held, however, the fact that there was sufficient evidence to support the conviction does not render the prosecutor's unconstitutional statements harmless. See *Burke,* 756 F.2d at 1302. The critical issues at the trial were force and consent, ultimately questions of credibility. See *Barbour,* 106 Ill.App.3d at 1000–1001, 63 Ill.Dec. at 705, 436 N.E.2d at 673; *Edmond,* 76 Ill.App.3d at 547, 32 Ill. Dec. at 113, 395 N.E.2d at 112. The defense theory of the case was apparently that petitioner and the complainant were out on a social evening and that Diane fully consented to intercourse. There were no witnesses to the alleged rape other than Diane and petitioner. Hence the conviction

rests largely on the credibility of Diane's testimony.

Diane's testimony was contradicted on two matters that might raise some reasonable doubts about her credibility. First Diane's testimony that she had had no contact with petitioner before the night of the alleged rape except for when he had worked on her car was contradicted by the testimony of Williams and Baker who testified that they had seen the two together socially on a prior occasion. That Diane might not have been entirely candid about the nature of her relationship with petitioner would tend to cast some doubt on the issue of consent. Second the medical evidence raises some question as to Diane's account of her struggle with petitioner. Diane testified that petitioner threw her head against the car door, but the hospital and police reports revealed no injuries to her head or neck. Nor was there any evidence of vaginal trauma. While it is important to note that evidence of injury is not necessary to support a conviction for rape, the absence of any physical injury would again tend to cast doubt on the issue of force under these particular circumstances.

The fact that Diane's testimony was contradicted in these two respects does not mean that her testimony as to the issues of force and consent was not ultimately credible. It does, however, preclude us from concluding that the government has sustained its burden of proving beyond a reasonable doubt that the prosecutor's improper remarks were harmless. Given that there was some question raised as to Diane's credibility, it is entirely possible that the jury may have been affected by the second prosecutor's two references to petitioner's failure to testify. Both comments came during the prosecutor's rebuttal argument; hence, they were the last statements from counsel that the jurors heard before they began their deliberations. Not only did the prosecutor suggest that Diane's testimony was uncontradicted, but he accentuated his remarks, and by implication petitioner's silence, by actually pointing to the witness stand. If there was any doubt in the jurors' minds as to whether Diane was a credible witness, it may well have been erased by the prosecutor's repeated inferences that petitioner would have taken the stand and testified if he could have rebutted her testimony and that his failure to do so was "indicia of [his] guilt." *Burke,* 756 F.2d at 1302.

Furthermore, although the trial judge admonished the prosecutor at the side-bar conference to refrain from further comment on petitioner's failure to testify, he did not immediately instruct the jury to disregard the prosecutor's prior remarks nor did he inform them of petitioner's constitutional right to remain silent. In his final instruction the judge did tell the jury that "the defendant is not required to prove his innocence" (Tr. 245) and "the fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict" (Tr. 246). Such final jury instructions, however, are "ordinarily not sufficient" to cure constitutional errors. *Burke,* 756 F.2d at 1303; *Buege,* 578 F.2d at 189.

The evidence against petitioner was not so overwhelming that it is clear beyond a reasonable doubt that absent the prosecutor's improper comments the jury would have found petitioner guilty of rape. Consequently, we must hold that the prosecutor's violation of petitioner's Fifth Amendment right against self-incrimination was not harmless.

As a result of the prosecutor's unconstitutional remarks here, the complainant, the petitioner, and the Illinois court system will all have to bear the burden of a new trial almost five years after the alleged incident occurred. Like the Supreme Court in *Hasting,* 461 U.S. 499, 512, 103 S.Ct. 1974, 1982, we question the competence and judgment of a prosecutor who jeopardizes his entire case with several ill-considered, not to mention unconstitutional, statements during closing argument. We continue to express our hope, as we did in *Burke,* that "our admonitions regarding closing arguments will not again go 'unheeded,' ... and that prejudicial indirect references to a defendant's failure to testify will cease to be

an issue before this court." 756 F.2d at 1304.

The judgment of the district court granting the petitioner's writ of habeas corpus is affirmed. Execution of the writ is stayed on condition that the State of Illinois grant petitioner a new trial on the charges resulting in his conviction within a reasonable time not to exceed ninety days, and diligently and without delay prosecute the charges to final conclusion.