**Eric REID, Petitioner,**

v.

**Thomas PAGE, Respondent,**

No. 98–2124.

United States District Court,
C.D. Illinois,
Danville/Urbana Division.

April 14, 1999.

Eric Reid, Menard Correctional Center, Menard, IL, plaintiff pro se.

Courtney D. Carter, Office of Illinois Attorney General, Chicago, IL, for defendant.

## ORDER

McCUSKEY, District Judge.

On June 2, 1998, Petitioner Eric Reid filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254[# 1]. In that petition, Reid challenges his 1991 state-court conviction for aggravated criminal sexual assault. As ordered, the Respondent Thomas Page has filed an answer to the petition [# 13], as well as a copy of the state court record [# 14]. In his answer, Respondent argues that Reid has procedurally defaulted some of his claims, and that the others lack merit.

Following a thorough review of the state court record, this court concludes that the state appellate court rendered a reasonable decision regarding two of Reid's claims, and that Reid has defaulted his remaining three claims. Accordingly, this court DENIES the Petition for Writ of Habeas Corpus in its entirety.

## FACTS

On June 29, 1990, the complainant, B.S., went to the grocery store just after midnight. As she was locking her car, a man forced her at knife-point to get back into the car and give him her money. The man then drove B.S. to a nearby park, took her eyeglasses, and forced her to undress. He ordered her not to look at him, and walked with her to a footbridge, where he repeatedly raped her. As they left the bridge, the man threatened to gouge B.S.'s eyes out when he caught her looking at him. He returned her glasses to her, and she drove out of the park. B.S. drove home immediately, and her husband called the police. She then went to the hospital, where she was examined.

At trial, Special Agent John Mertens, a DNA analyst for the FBI, described DNA and the testing process. He explained that DNA is a chemical found in the body that is a "blueprint" for all of the genetic material found in the cells of the body, and that all the body's cells would have the same DNA. The DNA between two people always differs unless they are identical twins. Scientists can identify differences in DNA between individuals by using the technique of DNA profiling or fingerprinting. This process involves extracting DNA from cells, separating the DNA into random-sized pieces, and then spreading out the pieces to be examined. At that point, the analyst can compare the DNA in question to known samples, such at those taken from a victim or suspect.

In this case, Mertens analyzed the DNA of the victim, her husband, and Reid to compare with the DNA extracted from the vaginal swabs taken from the victim the night of the attack. He could immediately eliminate B.S.'s husband as the contributor of the DNA. Then, based upon a visual examination, he concluded that the DNA taken from Reid's blood sample matched the DNA on the swabs. A computer-assisted program confirmed this visual

match. Mertens testified that the pattern of the samples were "exactly the same," and that the samples indicated no degradation or contamination. Mertens further explained that there appeared to be "very little breakdown" of the samples, but that a breakdown would lead to no result, rather than a wrong result. In other words, Mertens stated, it would be impossible to get a false positive reading.

Mertens stated that the DNA he tested in this case was in good condition. He said that the FBI's criteria for determining whether a match had been made was "more conservative" than those used by some other laboratories. Mertens explained that by "more conservative," he meant that the FBI's procedure would "definitely be more in favor of the defendant."

Finally, Mertens testified that "the probability of selecting an unrelated individual that would have the same DNA profile, as exhibited by the samples in this particular case, is approximately one in seventeen million." By that, he meant that if one searched within the general black population, one would have to test seventeen million unrelated individuals, selected at random, to find another who would exhibit the same DNA profile. On cross-examination, defense counsel questioned Mertens concerning the procedures he used, the possibility that mistakes were made or samples contaminated, and the distribution of DNA in population samples.

Dr. Michael Conneally, a professor in the field of medical genetics, testified that if enough genetic markers in a sample of semen match the DNA pattern of a suspect, that is "very conclusive evidence" that they came from the same person because the chance that another would have that pattern would be "very, very small." Conneally stated that he was familiar with the FBI's testing procedures, and that he examined the DNA tests performed by the FBI. From that, he concluded that Reid's blood's DNA matched the semen sample's DNA, but the DNA from B.S.'s husband's blood sample did not. He stated that the FBI's testing procedures were more conservative in favor of the suspect than are those employed in other laboratories. Finally, he stated that the FBI's conclusion that the likelihood of another unrelated individual having the same genetic markers was one in seventeen million was reliable, but not exact. On cross-examination, Conneally said that he became familiar with the data base that the FBI uses for its computer analysis from literature sent to him by the FBI forensic team. Conneally explained that such data bases are not published in scientific journals, and there is no way to check the accuracy of the method of gathering the data.

The trial court also admitted testimony of an expert witness comparing a photograph of a shoe print found at the scene of the crime with a shoe found in Reid's apartment. The expert testified that the shoe and the print had the same pattern, and that the shoe may have made the print. He could not, however, say with scientific certainty that the shoe had made the print found at the scene.

Reid was convicted of aggravated criminal sexual assault, and sentenced to an extended term of sixty years. Reid appealed his convictions. He argued, among other things, that expert testimony regarding the statistical probabilities involved in matching samples of DNA and the prosecutor's argument about this evidence deprived him of a fair trial, and that the trial court erred in admitting expert testimony about the shoe print. The Illinois Appellate Court, Fourth District, disagreed and affirmed his conviction. *People v. Reid,* 236 Ill.App.3d 1116, 211 Ill.Dec. 431, 655 N.E.2d 334 (1992). On March 31, 1993, the Illinois Supreme Court denied Reid's petition for leave to appeal.

On December 12, 1994, Reid filed a petition under the Illinois Post–Conviction Hearing Act. 725 Ill.Comp.Stat. 5/122–1 *et seq.* (West 1994). In his petition, he alleged that he received ineffective assis-

tance of trial and appellate counsel. The court dismissed this petition, stating that it was late and that it was neither verified nor supported by affidavit. The Appellate Court, Fourth District, affirmed the dismissal of Reid's post-conviction petition. *People v. Reid,* 285 Ill.App.3d 1114, 237 Ill.Dec. 335, 709 N.E.2d 321 (1997). The court agreed with the trial court that the petition was untimely, and that Reid failed to show that his untimeliness was not due to his culpable negligence. Furthermore, the court also found that the trial court properly concluded that Reid did not comply with the procedural requirements set forth in section 122–1 of the Post–Conviction Hearing Act as the petition was neither verified nor supported by affidavit. On June 4, 1997, the Illinois Supreme Court denied Reid's petition for Leave to Appeal the appellate court's decision.

## ANALYSIS

Reid filed his petition for a writ of habeas corpus with this court on June 2, 1998[# 1]; accordingly, review of this petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254 (West 1998); *Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir.1996), rev'd on other grounds, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under amended section 2254, to establish that a writ of habeas corpus should be granted, the petitioner must show that the claims were adjudicated on the merits in state court and the claims either: (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). In reviewing a petition for a writ of habeas corpus, any determination of a factual issue made by a state court will be presumed correct unless the petitioner can rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In addition, a writ of habeas corpus will not be granted unless the petitioner has exhausted the remedies available in state court. 28 U.S.C. § 2254(b).

A petitioner may procedurally default a claim if he failed to raise the issue properly on direct appeal or post-conviction review. *Rodriguez v. Peters,* 63 F.3d 546, 555 (7th Cir.1995). This court may not consider the merits of a petitioner's claim if the claim has been procedurally defaulted. *Momient–El v. DeTella,* 118 F.3d 535, 542 (7th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 448, 139 L.Ed.2d 384 (1997). Procedural default can occur in two ways: (1) the petitioner may fail to raise an issue on direct or post-conviction review; or (2) the state court may dispose of a claim on an independent and adequate state-law ground, such as a state procedural bar for failure to present a claim properly. *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Rodriguez,* 63 F.3d at 555. A federal court reviewing a habeas petition is required to respect a state court's finding under state law of waiver or procedural default. *Williams v. Lane,* 826 F.2d 654, 659 (7th Cir.1987). The Supreme Court has instructed that " '[f]ederal courts do not sit to correct errors made by state courts in the interpretation and application of state law.' " *Coleman v. O'Leary,* 845 F.2d 696, 700 (7th Cir.1988), cert. denied, 488 U.S. 972, 109 S.Ct. 507, 102 L.Ed.2d 542 (1988) (quoting *Williams,* 826 F.2d at 659).

If a claim is procedurally defaulted, the court may grant a writ on the claim only if the petitioner demonstrates cause sufficient to excuse the procedural default and actual prejudice resulting from a failure to obtain review of the merits. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). For there to be sufficient cause, there must have been some external impediment that prevented the petitioner from raising the claim.

*Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In the alternative, the petitioner may show that review of the claim is necessary to correct a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

In his petition, Reid argues that he entitled to relief based on the following: 1) the indictment charging him was based on perjured grand jury testimony and was not supported by probable cause; 2) he was denied effective assistance of trial and appellate counsel; 3) he was not proven guilty beyond a reasonable doubt; 4) the trial court erred by allowing the improper use of DNA evidence and statistical probabilities relating to that evidence; and 5) he was denied his right to a fair trial when the trial court allowed expert testimony comparing a shoe print found at the scene to a shoe found in his apartment.

Reid raised the first three claims in his petition for post-conviction relief. The trial court dismissed that petition because it was untimely and lacked the verification and affidavits required by section 122–1 of the Post–Conviction Hearing Act. The Illinois Appellate Court affirmed the dismissal, explicitly referring to the circuit court's application of time limitations and procedural requirements, and declining to address the merits of Reid's petition. *People v. Reid,* 285 Ill.App.3d 1114, 237 Ill.Dec. 335, 709 N.E.2d 321 (1997).

■ Thus, the dismissal of Reid's petition clearly rested on state procedural rules. Accordingly, Reid's first three claims are procedurally defaulted unless he can show good cause for the default and prejudice therefrom, or that review of the claims is necessary to correct a fundamental miscarriage of justice. Reid, however, has failed to point to any explanation for defaulting these issues. He does not even take issue in his petition with the Illinois Appellate Court's conclusion that he failed to follow the procedural requirements of the Post–Conviction Hearing Act. Nor does Reid argue that a fundamental miscarriage of justice would result if the court fails to consider the merits of these claims. These claims are therefore barred from consideration.

■ The court may address Reid's final two claims, however, as he raised them on direct appeal.[1] Reid argues that the trial court erred by allowing the state to present evidence that Reid's DNA matched DNA taken from B.S.'s vaginal swabs, and that the odds were astronomical that another, randomly-selected person's DNA could also match. The appellate court specifically and thoroughly addressed this argument in its decision on direct appeal. In affirming the trial court's decision to admit this evidence, the appellate court held that DNA evidence is admissible in criminal trials in Illinois. Reid, No. 4–91–0893, slip op. at 9 (citing *People v. Lipscomb,* 215 Ill.App.3d 413, 158 Ill.Dec. 952, 574 N.E.2d 1345 (1991); *People v. Miles,* 217 Ill.

1. Given the state court's finding that Reid's post–conviction petition was late, this court could find that his habeas petition was also untimely. Under the AEDPA, Reid was subject to a one-year period of limitations in which to file his petition. Because he was convicted before the AEDPA's enactment, his period of limitations began to run on the AEDPA's effective date of April 24, 1996. *Gendron v. United States,* 154 F.3d 672, 675 (7th Cir.1998). Reid's June 2, 1998 petition was filed more than two years after the effective date of the AEDPA. Although the one-year limitations period may be tolled for "the time during which a properly filed application" for state post-conviction relief is pending, an untimely petition is not considered "properly filed" and therefore cannot toll the limitations period under the statute. 28 U.S.C. § 2244(d)(2); *McClain v. Page,* 36 F.Supp.2d 819 (C.D.Ill.1999). Respondent, however, fails to raise the issue of the petition's untimeliness. Although there is authority allowing a district court to raise the issue sua sponte, this court will address the merits of Reid's petition in the interests of judicial economy, as the court believes the issues are clearly without merit. See *United States v. Allen,* 16 F.3d 377, 378–79 (10th Cir.1994) (recognizing power of both district and reviewing courts to raise sua sponte certain nonjurisdictional bars in habeas cases when doing so furthers judicial efficiency).

App.3d 393, 160 Ill.Dec. 347, 577 N.E.2d 477 (1991)). The court explained that the DNA identification procedure is generally accepted within the particular scientific fields involved, and that the procedures used to identify the probabilities that certain patterns exist are also acceptable. In addition, the court held, evidence about the statistical probability of another match is admissible as relevant to identification, and any challenge to its reliability went to its weight, rather than its admissibility. *Reid*, No. 4-91-0893, slip op. at 9-10 (citing *Lipscomb*, 158 Ill.Dec. 952, 574 N.E.2d at 1357, 1359; *Miles*, 160 Ill.Dec. 347, 577 N.E.2d at 484-85).

 The appellate court also rejected Reid's argument that the trial court erred by allowing an expert witness to testify that a shoe print found near the scene of the crime could have been made by a shoe found in Reid's apartment. The court concluded that this evidence was highly relevant under the facts of this case and generally admissible in criminal trials in Illinois. *Reid*, No. 4-91-0893, slip op. at 13 (citing *People v. Henne*, 165 Ill.App.3d 315, 116 Ill.Dec. 296, 518 N.E.2d 1276 (1988)). The court explained that the expert's inability to conclude with absolute certainty that one of Reid's shoes made the print went only to the weight of the evidence, not its admissibility. *Reid*, No. 4-91-0893, slip op. at 14.

The admissibility of evidence is generally a matter of state law, and therefore "a federal court can issue a writ of habeas corpus on the basis of a state court evidentiary ruling only when that ruling violated the defendant's right to due process by denying him a fundamentally fair trial." *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir.1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 720, 130 L.Ed.2d 626 (1995) (citing *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir.1990)). Given the limited nature of its inquiry and the record in this case, this court cannot conclude that the appellate court at any point in its analysis contradicted or unreasonably applied Su-

preme Court authority in determining that the challenged evidence was admissible. Further, there is simply no basis for this court to conclude that the state court's rulings regarding the admissibility of either the DNA or the shoe-print evidence undermined the fairness of Reid's trial. In sum, these were issues of state evidentiary rules, not constitutional ones, and this court defers to the state court's analysis, which was entirely reasonable. This court will not reverse the state court's reasoned judgment based on the record, and consequently these claims must fail.

### CONCLUSION

For the foregoing reasons, the court DENIES Reid's Petition for Writ of Habeas Corpus [# 1]. The clerk is directed to enter judgment in favor of Respondent and against Petitioner.